PEOPLE v DYER

Docket No. 76406. Submitted October 11, 1984, at Detroit.—Decided
January 23, 1985. Leave to appeal applied for.

Albert Dyer was convicted of carrying a concealed weapon, Re-
corder's Court of Detroit, Michael J. Talbot, J. Defendant
appealed, alleging that the trial court erred in excluding an
indorsed witness who indicated that, should he be called to
testify, he would invoke his Fifth Amendment right not to do
so. The defendant's theory of the case was that it was this
witness, not defendant, who possessed the weapon and dropped
it on the ground as the two were approached by police officers.
*Held:*

1. Generally, a party may not call as a witness a person who,
it is known, intends to invoke the Fifth Amendment privilege
to remain silent.

2. The rule which automatically excludes such a witness
applies only to situations in which a prosecutor intends to call
the witness, knowing the privilege will be invoked, and where
the invocation of the privilege will raise an inference prejudi-
cial to the defendant.

3. In this case, had the witness been called and had he
invoked the privilege, the inference of the witness' guilt would
not have prejudiced the defendant, but would, rather, have
aided the defendant's case. Therefore, the admissibility of the
testimony should have been subjected to normal rules of rele-
vancy. Using that analysis, the witness should have been
called.

4. Defendant's other allegations of error do not warrant
reversal.

Reversed and remanded.

CRIMINAL LAW — WITNESSES — PRIVILEGE NOT TO TESTIFY.
The rule which precludes a prosecutor from calling a witness

REFERENCES FOR POINTS IN HEADNOTE
21A Am Jur 2d, Criminal Law § 940.
29 Am Jur 2d, Evidence § 189.
Propriety and prejudicial effect of prosecution's calling as witness,
to extract claim of self-incrimination privilege, one involved in
offense charged against accused. 19 ALR4th 368.

when he knows the witness will invoke a privilege not to testify applies only to those cases in which the witness' invocation of the privilege would raise an inference prejudicial to the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Brigid Vincent Marley,* Assistant Prosecuting Attorney, for the people.

*George Stone,* for defendant on appeal.

Before: HOOD, P.J., and BEASLEY and P. J. MARUTIAK,* JJ.

PER CURIAM. Defendant appeals as of right from his jury conviction for carrying a concealed weapon. MCL 750.227; MSA 28.424.

Defendant raises four issues on appeal, one of which we find requires reversal and a new trial.

At about 9:20 p.m. on December 7, 1982, two police officers approached defendant and two other men, Michael Johnson and Woodrow Taylor, who were standing close together on a sidewalk. The officers testified that they saw defendant drop a gun when they were about five feet from defendant. Defendant testified that Michael Johnson dropped the disputed gun when Johnson saw the officers approaching.

The prosecution endorsed Johnson as a witness. During jury voir dire the trial court told the jury panel Johnson was a possible witness. After the prosecution presented its first witness, the trial court became concerned about Johnson's potential testimony. In a discussion on the record but without the jury present, the trial court asked counsel what Johnson might say on the stand. The assis-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tant prosecutor said he had no idea. Defense counsel said he didn't know whether Johnson would admit the gun was his or whether Johnson might invoke the Fifth Amendment privilege to remain silent. The trial court appointed an attorney present in the courtroom to represent Johnson. Following a brief recess, Johnson's appointed counsel stated that, should Johnson be called as a witness, Johnson would invoke his Fifth Amendment right by refusing to answer questions regarding the CCW because answers to those questions might tend to incriminate him. Johnson also told the trial court that he would invoke the Fifth Amendment privilege if he was called as a witness. After receiving this information, the trial court held that neither the prosecutor nor the defendant could call Johnson as a witness, relying upon *People v Giacalone,* 399 Mich 642, 645; 250 NW2d 492 (1977). Defendant objected, stating that the trial court was applying the *Giacalone* rule in an overbroad manner.

In this appeal, defendant argues that the trial court erred by excluding Johnson as a witness. For reasons not clearly argued by defendant, we agree.

In *Giacalone,* the prosecutor called a convicted accomplice to the stand knowing that the witness would invoke the Fifth Amendment privilege. On the stand, the accomplice refused to answer questions on the ground that his testimony might tend to incriminate himself. The Court said:

"A lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify. The American Bar Association standards relating to the prosecution and defense functions provide that it is unprofessional conduct for a prosecutor or a lawyer representing a defendant

"—'knowingly and for the purpose of bringing inad-

missible matter to the attention of the judge or jury to offer inadmissible evidence';

"—'to call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege.'

"The rationale of the rule has been explained by the Supreme Court of Iowa:

"'When an alleged accomplice invokes the privilege in the presence of the jury, prejudice arises from the human tendency to treat the claim of privilege as a confession of crime, creating an adverse inference which an accused is powerless to combat by cross-examination.' *State v Allen,* 224 NW2d 237, 241 (Iowa, 1974)." *Giacalone,* p 645 (footnote omitted).

While we agree that the above language appears to preclude a defendant from calling as a witness one who intends to invoke the Fifth Amendment privilege to remain silent, we find that the holding in *Giacalone* is not that broad.

First, this case is factually distinguishable from *Giacalone.* The proposed witness in *Giacalone* was a convicted accomplice. Giacalone's attorney opposed the prosecutor's presentation of that witness for the purpose of eliciting the accomplice's statement that he would invoke his right to remain silent under the Fifth Amendment. The attorney opposed such testimony because it would raise an inference prejudicial to Giacalone. *Id.,* pp 646-647. By contrast, in this case the proposed witness, Johnson, was not an accomplice. Nor did defendant's attorney oppose having the prosecutor call Johnson as a witness. Rather, he wanted Johnson presented as a witness. Indeed, defendant's theory or defense was that the police officers mistakenly believed that defendant, rather than Johnson, possessed and dropped the gun. Had Johnson testified that he would not answer questions regarding the transaction at issue in this case on grounds that

those answers might tend to incriminate him, the jury might have inferred that Johnson was covering up because he, not defendant, was the wrongdoer.

Second, the rationale for the *Giacalone* rule does not apply here. The Court said its rule was one of evidence, not grounded on the Sixth Amendment right to confront witnesses brought against an accused. *Id.,* p 646, fn 6. The Court said that evidence that an accomplice witness intends to remain silent for the reason that his or her answers to a prosecutor's questions might be self-incriminating is almost certain to be prejudicial to the defendant. The invocation of the privilege under those circumstances raises a negative inference that cannot be refuted with effective cross-examination. *Giacalone,* p 646, fn 6. By contrast, as we have stated above, Johnson's testimony that he would invoke the Fifth Amendment privilege would raise an inference beneficial to defendant. See, Comment, *Exercise of the Privilege Against Self-Incrimination by Witnesses and Co-defendants: The Effect Upon the Accused,* 33 U Chi L Rev 151, 159-160 (1965).

For the above reasons, we limit the *Giacalone* automatic exclusion rule to only those situations in which a prosecutor intends to call a witness knowing that the witness will invoke a testimonial privilege and, by doing so, will raise an inference prejudicial to the defendant. See *People v Benton,* 402 Mich 47, 60 fn 18; 260 NW2d 77 (1977), and *People v Jerry Johnson (After Remand),* 86 Mich App 430, 433-434; 272 NW2d 672 (1978), *lv den* 406 Mich 864 (1979). But see, *People v Bashans,* 80 Mich App 702; 265 NW2d 170 (1978).

Therefore, we find that the trial court erred by relying on the *Giacalone* rule to exclude Johnson's testimony. Instead, the trial court should have

determined the admissibility of Johnson's testimony by applying the normal rules of relevancy. See MRE 401-403. Our analysis of the admissibility of that testimonial evidence based upon the rules of relevancy causes us to conclude that Johnson's testimony should have been admitted. The inference raised by Johnson's statement that he would refuse to answer questions for the reason that those answers might tend to incriminate him is relevant because it would tend to make defendant's testimony that Johnson dropped the gun more probable. MRE 401. Thus, without further analysis, the testimony is admissible. MRE 402. However, although Johnson's testimony is relevant it is also prejudicial; prejudicial to the people because it would not be substantial evidence and Johnson could not be cross-examined. Therefore, Johnson's testimony might be misleading. MRE 403.

Nevertheless, under the particular circumstances of this case, we find that Johnson's testimony would have been more probative than prejudicial. This case amounted to a credibility contest between the police officers and defendant. The inference arising from Johnson's testimony could have substantially bolstered defendant's credibility and, thus, tipped the balance toward his acquittal. Therefore, we find in this case that the trial court's exclusion of Johnson's testimony was error requiring reversal.

Although the remaining issues are not dispositive, we address them summarily. We agree that the trial judge was on occasion unnecessarily curt or abrupt with defense counsel. However, we do not find that the trial court's behavior denied defendant's right to have effective representation by failure to treat defendant's counsel with consid-

eration. *People v Neal,* 290 Mich 123, 129, 287 NW 403 (1939). Most of the comments of which defendant complains occurred outside the jury's presence. Contrast *In re Parkside Housing Project,* 290 Mich 582, 596; 287 NW 571 (1939).

We also agree that the prosecutor's comments during closing argument came close to causing reversible error. Contrary to a pretrial order granting defendant's motion to exclude evidence of defendant's prior convictions, the prosecutor argued:

"Defendant's lawyer says that he, the defendant, is just Al Dyer from the City of Detroit. You don't know anything about this man. Nothing at all, except the few words he said from the witness stand. Don't believe for one second that he's just Al Dyer from the City of Detroit, because there's a lot more to that man than what his lawyer just told you. So don't believe that for a moment. He's not just what the defense lawyer would have you believe. And the law has narrowed this case to what everyone has seen here. We are not allowed to prove to you other background materials. So don't believe that assertion for one second. It's not true."

The prosecutor also injected additional evidence not of record by stating in rebuttal that "[t]he leading cause of death among young black men in this city is homicide". This remark was improper. *People v Knolton,* 86 Mich App 424, 428; 272 NW2d 669 (1978), *lv den* 406 Mich 885 (1979). However, defendant did not object to this comment and we do not find the prosecutor's conduct alone sufficient reason to reverse.

We do not address defendant's final issue because, as he admits, it has no bearing whatsoever on his trial or conviction.

Reversed and remanded.