## PEOPLE v DYER

Docket No. 75924. Argued December 18, 1985 (Calendar No. 13).
Decided August 5, 1986.

Albert Dyer was convicted by a jury in the Recorder's Court of
Detroit, Michael J. Talbot, J., of carrying a concealed weapon.
The Court of Appeals, Hood, P.J., and Beasley and Marutiak,
JJ., reversed in an opinion per curiam and remanded the case
to the trial court, holding that the trial court had erred in
precluding the calling of a witness, by either the prosecution or
the defense, who indicated that he would invoke his privilege
against self-incrimination, because only the prosecution was
precluded from calling such a witness (Docket No. 76406). The
people appeal.

In an opinion by Justice Cavanagh, joined by Chief Justice
Williams and Justices Levin, Brickley, Boyle, and Riley, the
Supreme Court *held:*

The rule that a lawyer may not knowingly offer inadmissible
evidence or call a witness knowing that the witness will claim a
valid privilege not to testify applies to defense counsel as well
as the prosecution.

1. A witness' privilege against self-incrimination is held by
the witness; however, the witness is not the sole judge of
whether testimony is or may be incriminating. The privilege
may not be asserted where there is no reasonable basis to fear
incrimination. A trial court may compel a witness to answer a
question, but only where the court can foresee, as a matter of
law, that such testimony would not incriminate the witness.

2. In this case, the trial court properly appointed counsel for

References

Am Jur 2d, Witnesses § 2.

Propriety and prejudicial effect of prosecution's calling as witness,
to extract claim of self-incrimination privilege, one involved in
offense charged against accused. 19 ALR4th 368.

Right of defendant in criminal proceeding to have immunity from
prosecution granted to defense witness. 4 ALR4th 617.

Violation of federal constitutional rule (Griffin v California) prohib-
iting adverse comment by prosecutor or court upon accused's
failure to testify, as constituting reversible or harmless error. 24
ALR3d 1093.

the witness and established out of the presence of the jury that the desired testimony might have tended to incriminate him and that he intended to exercise his right against self-incrimination. Allowing the witness to have been called only to invoke his Fifth Amendment privilege would have produced no substantial evidence. A witness who exercises the privilege is not confessing or admitting guilt, and no inferences may be drawn from a refusal to testify.

Justice LEVIN, concurring, stated that although a prosecutor and a defendant are not in the same position with respect to a witness who invokes the Fifth Amendment privilege not to testify because the defendant cannot confer immunity and thereby obtain the witness' testimony, nevertheless, that imbalance does not justify a defendant calling a witness who he knows will invoke the privilege. The question whether a defendant has a right to witness immunity must await an appropriate case for resolution.

Reversed.

Justice ARCHER took no part in the decision of this case.

140 Mich App 343; 364 NW2d 330 (1985) reversed.

OPINION OF THE COURT

1. CRIMINAL LAW — WITNESSES — SELF-INCRIMINATION — INADMISSIBLE EVIDENCE.

The rule that a lawyer may not knowingly offer inadmissible evidence or call a witness knowing that the witness will claim a valid privilege not to testify applies to defense counsel as well as the prosecution (US Const, Am V).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Brigid Vincent Marley,* Assistant Prosecuting Attorney, for the people.

*George Stone* for the defendant.

CAVANAGH, J. Defendant was convicted by a jury of carrying a concealed weapon in violation of MCL 750.227; MSA 28.424, and was sentenced to one year in the Detroit House of Corrections. The Court of Appeals reversed defendant's conviction

and remanded the case to the trial court.[1] This
Court granted the prosecutor's application for
leave to appeal.[2]

The Court of Appeals summarized the facts as
follows:

> At about 9:20 P.M. on December 7, 1982, two
> police officers approached defendant and two other
> men, Michael Johnson and Woodrow Taylor, who
> were standing close together on a sidewalk. The
> officers testified that they saw defendant drop a
> gun when they were about five feet from defen-
> dant. Defendant testified that Michael Johnson
> dropped the disputed gun when Johnson saw the
> officers approaching.
>
> The prosecution endorsed Johnson as a witness.
> During jury voir dire the trial court told the jury
> panel Johnson was a possible witness. After the
> prosecution presented its first witness, the trial
> court became concerned about Johnson's potential
> testimony. In a discussion on the record but with-
> out the jury present, the trial court asked counsel
> what Johnson might say on the stand. The assis-
> tant prosecutor said he had no idea. Defense coun-
> sel said he didn't know whether Johnson would
> admit the gun was his or whether Johnson might
> invoke the Fifth Amendment privilege to remain
> silent. The trial court appointed an attorney pres-
> ent in the courtroom to represent Johnson. Follow-
> ing a brief recess, Johnson's appointed counsel
> stated that, should Johnson be called as a witness,
> Johnson would invoke his Fifth Amendment right
> by refusing to answer questions regarding the ccw
> because answers to those questions might tend to
> incriminate him. Johnson also told the trial court
> that he would invoke the Fifth Amendment privi-
> lege if he was called as a witness. After receiving
> this information, the trial court held that neither
> the prosecutor nor the defendant could call John-
> son as a witness, relying upon *People v Giacalone,*

[1] 140 Mich App 343; 364 NW2d 330 (1985).
[2] 422 Mich 937 (1985).

399 Mich 642, 645; 250 NW2d 492 (1977). Defendant objected, stating that the trial court was applying the *Giacalone* rule in an overbroad manner. [140 Mich App 344-345.]

The Court of Appeals agreed with defendant that the trial court erred by excluding Johnson as a witness. The Court of Appeals found that this Court's holding in *Giacalone* was limited to the prosecution despite the broad language of the opinion prohibiting either party from calling a witness who intends to invoke the Fifth Amendment privilege to remain silent.

> [W]e limit the *Giacalone* automatic exclusion rule to only those situations in which a prosecutor intends to call a witness knowing that the witness will invoke a testimonial privilege and, by doing so, will raise an inference prejudicial to the defendant. [140 Mich App 347.]

The Court of Appeals distinguished *Giacalone* from the present case, finding that the assertion of the testimonial privilege by res gestae witness Johnson in the presence of the jury might have proven favorable to defendant.

> Had Johnson testified that he would not answer questions regarding the transaction at issue in this case on grounds that those answers might tend to incriminate him, the jury might have inferred that Johnson was covering up because he, not defendant, was the wrongdoer. [140 Mich App 346-347.]

The Court of Appeals found Johnson's testimony relevant to defendant's defense that Johnson, not defendant, dropped the gun. MRE 401. While recognizing that Johnson's testimony would be prejudicial to the prosecution because it was not "substantial evidence" and allowed no cross-examina-

tion, the Court of Appeals found the testimony more probative than prejudicial and therefore admissible. MRE 402, 403.

The prosecutor argues that the Court of Appeals has erred in failing to apply the exclusionary rule of *Giacalone* to both the defense and the prosecution. We agree. Although the facts of *Giacalone* can be distinguished from the facts of the present case, the rule of law remains the same; a lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify.

In *Giacalone,* the defendant appealed his conviction, arguing that the prosecutor acted improperly in calling a codefendant to testify knowing that the codefendant would claim the privilege against self-incrimination and, in so doing, would raise an inference adverse to defendant in the minds of the jury. Giacalone's defense counsel had objected to the calling of this witness. *Giacalone, supra,* pp 643-644, 647. In reversing Giacalone's conviction, this Court cited the American Bar Association standards relating to unprofessional prosecutorial and defense conduct.

> A lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify. The American Bar Association standards relating to the prosecution and defense functions provide that it is unprofessional conduct for a prosecutor or a lawyer representing a defendant
> —"knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence";[4]
> —"to call a witness who he knows will claim a valid privilege not to testify, for the purpose of

impressing upon the jury the fact of the claim of privilege."[5]

---

[4] ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function (Approved Draft, 1971), § 5.6(b) (the prosecution function) and § 7.5(b) (the defense function).

[5] Id., § 5.7(c) (the prosecution function) and § 7.6(c) (the defense function).

---

[*Giacalone, supra,* p 645.]

While the holding in *Giacalone* is based on evidentiary trial error, this Court recognized that a number of decisions finding error in these circumstances were based on a denial of defendant's Sixth Amendment right of confrontation, as a defendant cannot effectively cross-examine a witness who invokes his testimonial privilege.[3] This Court declined to reach the constitutional issue in *Giacalone.*

In the present case, Johnson was a res gestae witness.[4] Defense counsel had no objection to John-

---

[3] *State v Nelson,* 72 Wash 2d 269; 432 P2d 857 (1967); *Commonwealth v Terenda,* 451 Pa 116; 301 A2d 625 (1973); and *Robbins v Small,* 371 F2d 793 (CA 1, 1967), *cert den* 386 US 1033; 87 S Ct 1483; 18 L Ed 2d 594 (1967). See also *Douglas v Alabama,* 380 US 415; 85 S Ct 1074; 13 L Ed 2d 934 (1965). [*Giacalone, supra,* pp 645-646, n 6.]

[4] A res gestae witness is one who is present at the scene of the alleged crime, at the time of the alleged crime, or one who had occasion to observe the surrounding events and circumstances. This includes those who were eyewitnesses to some event in the continuum of the criminal act and whose testimony will aid in the full disclosure of facts surrounding the alleged commission of the crime. *People v LeFlore,* 96 Mich App 557; 293 NW2d 628 (1980).

It is the prosecutor's duty to endorse all such witnesses and to produce them at trial. MCL 767.40; MSA 28.980. There were three res gestae witnesses endorsed in the present case: Woodrow Taylor, Michael Johnson, and Deborah Morrison, who had called the police on the night in question. A notation in the lower court file indicates that the trial court found that the prosecutor had exercised due diligence in attempting to locate these witnesses. Such a finding is required by *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), to excuse the prosecutor from his duty to produce these witnesses at trial. Apparently Johnson's appearance at Dyer's trial surprised the prosecutor.

son testifying. Johnson was not an accomplice or a codefendant. No charges had been brought against him.[5] If Johnson had testified that the gun was his or Woodrow Taylor's and if the jury had believed his testimony, defendant would have been acquitted of the charge against him. Defendant contends that calling Johnson to the stand in order to invoke his Fifth Amendment rights in the presence of the jury was necessary to corroborate defendant's alibi by raising an inference beneficial to his defense.

Johnson had a right under both the federal and state constitutions to exercise his privilege against self-incrimination. This privilege is held by the witness. However, the witness is not the sole judge of whether the testimony is or may be incriminating. The constitutional privilege against self-incrimination must not be asserted by a witness too soon, that is, where there is no reasonable basis for a witness to fear incrimination from questions which are merely preliminary. *In re Schnitzer*, 295

---

[5] The prosecutor made the following comment to the trial court in Johnson's presence:

> *Mr. Walsh:* Somebody's going to burn for the gun, Your Honor. If the jury believes Mr. Johnson, then Mr. Johnson is going to stand trial on this gun case. And if the jury disbelieves him, as is our theory, then Mr. Dyer is going to get the prize.

At the time this comment was made, the court had already appointed counsel for Johnson. Johnson's counsel had spoken with him and informed the court that he had advised Johnson not to answer any questions about the incident involved in the present trial. Had the prosecutor made such a comment *prior* to the court's action, it may have constituted intimidation of a witness requiring reversal. *People v Pena*, 383 Mich 402; 175 NW2d 767 (1970).

The proper procedure is for the prosecutor to inform the court, out of the presence of the witness, of the possible need for the witness to be informed of Fifth Amendment rights. If the trial judge finds such a warning necessary, the court should inform the witness of his right not to incriminate himself. This should be done out of the presence of the jury. *People v Callington*, 123 Mich App 301, 307; 333 NW2d 260 (1983). See also *United States v Smith*, 156 US App DC 66; 478 F2d 976 (1973).

Mich 736, 740; 295 NW 478 (1940). However, a trial court may compel a witness to answer a question only where the court can foresee, as a matter of law, that such testimony could not incriminate the witness. 5 Callaghan's Michigan Pleading & Practice (2d ed), § 37.143, p 464.

Defendant claims that Johnson should have been called to the stand and compelled to answer questions which were not incriminating. We find that the trial court properly appointed counsel for Johnson and held an evidentiary hearing outside of the jury's presence in order to establish Johnson's intention to "plead the Fifth" on the record. We agree with the trial court and Johnson's counsel that answering any questions concerning the evening of defendant's arrest, even as to Johnson's presence at the scene of the crime, might have tended to incriminate Johnson.

Placing Johnson on the stand to invoke his Fifth Amendment privilege may have allowed the jury to infer that Johnson, not defendant, was guilty of the present charge. However, as the Court of Appeals noted, this procedure would produce no "substantial evidence." A witness who exercises his Fifth Amendment right is not confessing or admitting guilt. Therefore no inferences may be. drawn from his refusal to testify.

> There is disagreement whether a claim of the self-incrimination privilege logically supports an inference of guilt. While the law draws no such inference, "the layman's natural first suggestion would probably be that the resort to privilege in each instance is a clear confession of crime." 8 Wigmore, Evidence (McNaughton rev), § 2272, p 426. [399 Mich 646, n 6.]

In *People v Thomas,* 51 NY2d 466; 434 NYS2d 941; 415 NE2d 931 (1980), the New York Court of

Appeals held that defense counsel had no absolute right to call an alibi witness who counsel knew would refuse to testify on the basis that his testimony might be self-incriminating. In *Thomas,* as in the present case, defense counsel wanted the witness to invoke his testimonial privilege in front of the jury.

> [A] witness' refusal to testify on constitutional grounds does not, in and of itself, have any real probative significance, although it may have a disproportionate impact upon the minds of the jurors and may tend to create the impression that the witness is guilty of a particular crime . . . .
>
> * * *
>
> [A] particular witness' decision to refrain from testifying can never mean more than that the witness himself believes that something he might say would tend to implicate him with respect to some criminal wrongdoing of which only he is aware. It would thus be wholly improper in most situations to give the jurors an opportunity to speculate as to the nature of this wrongdoing by allowing a party to parade a witness before the jury for the sole purpose of eliciting in open court the witness' refusal to testify. [*People v Thomas,* 51 NY2d 472-473.][6]

The purpose in applying *Giacalone* to the defense as well as the prosecution was most ably

---

[6] See *United States v Johnson,* 488 F2d 1206 (CA 1, 1973); *State v Polsky,* 82 NM 393; 482 P2d 257 (1971); *State v Igoe,* 206 NW2d 291 (ND, 1973); *Commonwealth v Greene,* 445 Pa 228; 285 A2d 865 (1971); *State v McBride,* 226 NW2d 175 (SD, 1975); *Bradley v United States,* 136 US App DC 339; 420 F2d 181 (1969); *United States v Atnip,* 374 F2d 720 (CA 7, 1967).

Not only was the defense prohibited from calling any witnesses who would take the Fifth on the stand, but it was found improper for either party to comment on the failure of the other party to produce such a witness. *United States v Johnson; United States v Atnip; State v McBride.* A majority of these cases permits or requires a neutralizing instruction to be given to the jury when properly requested by either party. (See discussion below.)

articulated in *People v Diaz,* 98 Mich App 675, 684; 296 NW2d 337 (1980).[7]

> As a matter of public policy, we believe the exercise of a witness's constitutional right to remain silent should not be used as evidence to support an inference for either side. Such an inference is wholly speculative since it rests on litigants' perception of juries' foibles. A jury may infer the refusal to testify is a confession implicating defendant or may somehow believe defendant was not involved since his accomplice would not testify. Neither inference is desirable because the former is obviously prejudicial to defendants while the latter inference cannot be combated by the truth testing device of cross-examination due to the constitutional rights of the witness. Nor can the evidence be termed "relevant evidence." Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. The wholly specu-

---

[7] In contrast, while ostensibly affirming the exclusionary rule in *Giacalone,* the Court of Appeals failed to apply it to the defense in *People v Jerry Johnson (After Remand),* 86 Mich App 430; 272 NW2d 672 (1978), and *People v Bashans,* 80 Mich App 702; 265 NW2d 170 (1978).

In *Johnson,* the Court found that a res gestae witness who plans to invoke his testimonial privilege should be called to the stand in order to allow defense counsel the opportunity to impeach his testimony. In *Bashans,* the Court held that a codefendant who agrees to take the stand to invoke his testimonial privilege after advice of counsel and warnings from the judge may be called.

The Court concluded in both cases, as in the present case, that any inferences drawn from the witness' refusal to answer on the basis of self-incrimination would benefit defendants. As we stated earlier, the invocation of the testimonial privilege has no probative value. Neither the court nor the jurors should speculate as to the possible meaning of this act by a witness. Nor would impeachment by either party be possible as there is no substantive evidence to impeach.

The Court of Appeals should have applied *Giacalone* to the defense counsel as well as the prosecution in both cases. Either party could have requested a neutralizing instruction to prevent a prejudicial inference being drawn by the jury from the failure of the defense to produce an alibi witness.

lative inference advanced by defendant does not make the existence of any fact of consequence more probable or less probable. The witness was properly excluded. MRE 403.

In *Giacalone,* Justice LEVIN, writing for the Court, questioned the efficacy of instructions given after a witness has invoked his testimonial privilege on the stand. Justice LEVIN cited Judge Learned Hand's reference to Wigmore's description of such instructions as "mental gymnastics" in *United States v Maloney,* 262 F2d 535, 538 (CA 2, 1959). *Maloney,* like *Giacalone,* involved the calling of a codefendant to the stand by the prosecution and the attempt to cure such error with a cautionary instruction.

We believe that the present case differs from *Giacalone* in this respect: Where a party does not produce or call a codefendant or known witness to substantiate a claim of innocence or guilt, the jury may draw an adverse inference from the *absence* of this evidence. A neutralizing instruction explains to the jurors that they may draw no inference from the absence of certain witnesses nor engage in speculation about the possible nature of their testimony.

In the present case, the trial court gave the following cautionary instruction to the jury:

> There has also been reference made to two individuals who may or may not have been out on the street at that time, and their names were mentioned to you. Do not speculate one way or the other as to what, if anything, these individuals might have testified to, because that should not be held against either the prosecution or the defense that you have not heard from those witnesses. Do not speculate as to what they might have testified to.

It is unclear from the lower court record whether defense counsel requested such an instruction or the court gave it sua sponte. Both the prosecutor and defense counsel stated that they were satisfied with the instructions given by the court. We feel that a neutralizing instruction, while not mandatory, should be given when properly requested by either party in order to avoid unfair prejudice and to aid in trial strategy.

We reverse the decision of the Court of Appeals and reinstate defendant's conviction.[8]

WILLIAMS, C.J., and LEVIN, BRICKLEY, BOYLE, and RILEY, JJ., concurred with CAVANAGH, J.

LEVIN, J. (*concurring*). When a witness called by the people invokes his Fifth Amendment privilege, the prosecutor can obtain the witness' testimony by providing him with immunity from prosecution.

A defendant cannot confer immunity on and thereby obtain the testimony of a witness he wishes to call who has invoked his Fifth Amendment privilege.

The prosecutor and the defendant are thus not in the same position when a witness invokes his Fifth Amendment privilege. Nevertheless, I agree with the opinion of the Court that this imbalance does not justify the defendant any more so than the people in calling a witness who he knows will claim a valid privilege not to testify for the

---

[8] We agree with the Court of Appeals disposition of defendant's other issues. We note in particular the prosecutor's improper comments during closing argument and hope that no further caution or reprimand will be necessary to deter such behavior in the future.

purpose of impressing upon the jury the fact of the claim of privilege. No inference may properly be drawn from the claim of privilege, and thus on principle neither side may seek to place this non-evidence before the jury.

A defendant may, however, have the right to obtain the testimony of the witness who invoked the privilege, just as the prosecutor might by granting immunity. To deny the defendant the testimony of the witness might be violative of the Due Process Clause, the Confrontation Clause, or other constitutional and statutory rights. The question whether a defendant has a right in a particular case to witness immunity has evoked a sharp division of opinion and much critical comment.[1]

In an appropriate case where the facts justify consideration of the question and it has been duly

---

[1] See *Government of Virgin Islands v Smith,* 615 F2d 964 (CA 3, 1980); *United States v Herman,* 589 F2d 1191 (CA 3, 1978), cert den 441 US 913 (1979); *United States v Leonard,* 161 US App DC 36, 66, n 79; 494 F2d 955 (1974) (Bazelon, J., concurring in part and dissenting in part); *Earl v United States,* 124 US App DC 77, 80, n 1; 361 F2d 531 (1965), reh den 364 F2d 666 (1966), cert den 388 US 921 (1967); *People v Shapiro,* 50 NY2d 747; 409 NE2d 897 (1980); *People v Adams,* 53 NY2d 241; 423 NE2d 379 (1981); *State v Broady,* 41 Ohio App 2d 17; 321 NE2d 890 (1974).

See also Westen, *The compulsory process clause,* 73 Mich L R 71 (1974); 3 LaFave & Israel, Criminal Procedure, pp 22-24; Note, *Separation of powers and defense witness immunity,* 66 Geo L J 51 (1977); Note, *"The public has a claim to every man's evidence": The defendant's constitutional right to witness immunity,* 30 Stan L R 1211 (1978); Note, *The Sixth Amendment right to have use immunity granted to defense witnesses,* 91 Harv L R 1266 (1978).

But see, e.g., *United States v Alessio,* 528 F2d 1079 (CA 9, 1976), cert den 426 US 948 (1976), reh den 429 US 873 (1976); *United States v Ramsey,* 503 F2d 524 (CA 7, 1974), cert den 420 US 932 (1975); Note, *The case against a right to defense witness immunity,* 83 Colum L R 139 (1983). Cf. *People v Priester,* 98 AD2d 820; 470 NYS2d 478 (1983); Strachan, *Self-incrimination, immunity, and Watergate,* 56 Tex L R 791 (1978).

raised, preserved, and presented for review, the Court of Appeals or this Court should consider the question.

ARCHER, J., took no part in the decision of this case.