**STATE of Iowa, Appellee,**

v.

**Randall Joseph BEDWELL, Appellant.**

No. 86–1878.

Supreme Court of Iowa.

Dec. 23, 1987.

Charles A. Coppola, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., James Smith, Co. Atty., and Harlan Lemon, Asst. Co. Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and NEUMAN, JJ.

CARTER, Justice.

Defendant, Randall Joseph Bedwell, appeals from his convictions of second-degree burglary in violation of Iowa Code section 713.5 (1985) and willfully eluding a pursuing law enforcement vehicle in violation of Iowa Code section 321.279 (1985). He assigns several errors upon which he seeks to obtain a reversal of these judgments. Upon carefully considering each claim in light of the evidence produced at trial, we affirm the judgment of conviction with respect to both crimes.

On June 15, 1986, Ron and Chad Bagby observed a strange automobile parked in a neighbor's driveway in Des Moines. They observed one man emerge from the neighbor's residence with a television set in his arms while another man waited in the passenger's seat of the automobile. When the Bagbys approached, the man holding the television set abandoned it, entered the automobile and drove away.

The Bagbys telephoned Des Moines police who made radio contact with a patrol officer in the area. That officer pursued the fleeing automobile for approximately .6 of a mile. At that point, the driver of the pursued vehicle abandoned it and fled into a wooded area. Later in the evening, a male subject walked into the residence of Gary Murphy in the general vicinity of that wooded area and asked permission to use Murphy's telephone.

The Bagbys later identified defendant as the party they had observed removing the

television set and driving away in the automobile. This identification was made from a photographic array shown to them by Des Moines police. Murphy also identified defendant as the party who had asked to use his telephone.

Defendant testified at trial and indicated that it was his companion and not he who had entered the residence of the Bagbys' neighbor and removed the television set. He indicated that he gave no cooperation to that venture except by hastily driving his companion away from the scene of the break-in and by attempting to elude the pursuing police officer. Defendant admitted at trial that he was the party using Murphy's telephone.

Defendant assigns errors concerning: (1) refusal to suppress an impermissibly suggestive identification from the photographic array, (2) refusal to permit him to call a witness who had previously indicated that he would assert his fifth amendment privilege against self-incrimination, (3) allowing the State to present a substitute witness to testify to matters that were listed as the testimony of a different witness, (4) in permitting speculative footprint evidence, (5) in not directing a verdict on the claim of willfully eluding a pursuing law enforcement vehicle, and (6) in failing to permit an offer of proof concerning evidence that charges against defendant's accomplice had been dismissed by the State. We consider each of these issues.

## I. *Claim of Impermissibly Suggestive Identification.*

■ Defendant urges that he was the victim of an impermissibly suggestive identification both with respect to the Bagbys' identification and that made by Gary Murphy. Any error with regard to Murphy's identification would be harmless in light of the fact that defendant concedes that he was the man observed by Murphy using his telephone. Accordingly, we consider only those issues involving Bagbys' identification.

Defendant was identified prior to trial and in the courtroom by Ron Bagby and Chad Bagby as the man they saw walking out of their neighbor's house carrying a television set in his arms. The photographic array shown to these witnesses following the crime contained a photograph of defendant's face and upper torso along with photographs of five other persons. Defendant claims that the photographic array was impermissibly suggestive because the size of his head in the photograph is larger than the heads and faces of the other five subjects. He also claims the photographs improperly showed a tattoo on his upper torso containing the name "Randy."

■ In analyzing defendant's claim, we apply a two-part test: (1) Did the photographic array present defendant in an impermissibly suggestive posture, and (2) if so, under the totality of circumstances, did the procedure give rise to a substantial likelihood of misidentification? *See State v. Rawlings,* 402 N.W.2d 406, 407 (Iowa 1987); *State v. Neal,* 353 N.W.2d 83, 87 (Iowa 1984); *State v. Mark,* 286 N.W.2d 396, 404 (Iowa 1979).

■ Although there are differences between Bedwell and the other subjects shown in the photographic array, it does not appear that the display was impermissibly suggestive. Defendant's features are not more clearly discernible in the photographic array than those of the other subjects as a result of the differences in the size of photographic reproduction. There is no indication that the Bagbys were aware that the subject they observed at the scene of the crime was named Randy.

In addition, there is strong evidence suggesting that the Bagbys' opportunity for observing the defendant was good and that their perception was reasonably fresh at the time they viewed the photographic array. The description which they gave to police officers at the time they reported the crime sufficiently depicted defendant's physical characteristics to be corroborative of their later identification. Under the totality of circumstances, we conclude that the identification testimony was properly admitted into evidence to be considered by the jury.

## II. Refusal to Permit Calling of Witness Who Indicated That Fifth Amendment Privilege Would Be Invoked.

■ The trial court refused to permit defendant to call as a witness his companion at the scene of the burglary. This determination was based on the fact that this witness had indicated, through counsel, an intention to claim his fifth amendment privilege against self-incrimination. The defendant argues that restrictions against calling witnesses before the jury who have indicated an intention to invoke their fifth amendment privileges only preclude the State from calling such witnesses. He asserts that there is no similar restriction against a defendant calling a witness who has predetermined to invoke the privilege. In advancing this argument, defendant relies on the rationale of the Michigan Court of Appeals in *People v. Dyer*, 140 Mich. App. 343, 347, 364 N.W.2d 330, 333 (1985).

The *Dyer* case was subsequently reversed by the Michigan Supreme Court in *People v. Dyer*, 425 Mich. 572, 390 N.W.2d 645 (1986) (neither prosecutor nor defendant should call a witness who intends to invoke fifth amendment privilege). The latter court adopted the views expressed in *Bowles v. United States*, 439 F.2d 536 (D.C.Cir.1970), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). The court in *Bowles* declined to permit a defendant to call a witness predetermined to invoke his fifth amendment privilege stating that "the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege *whether those inferences be favorable to the prosecution or the defense.*" *Id.* at 541 (emphasis added). We agree with that conclusion. The district court was correct in refusing to permit defendant to call the witness.

## III. Allowing the State to Present a Substitute Witness.

■ Defendant challenges the trial court's denial of his motion to suppress the testimony of Jane Sims, one of the owners of the home which was the subject of the burglary charged in the information. Originally, Mrs. Sims' husband had been listed as a witness. Upon his unavailability at the time of trial, the State sought to substitute Mrs. Sims to testify as to circumstances which were observed when she and her husband returned home following the break-in. In permitting Mrs. Sims to testify, the trial court offered to grant defendant a continuance long enough to discover the nature of her testimony. Defendant declined the offer.

■ Noncompliance with the notice requirements of Iowa Rule of Criminal Procedure 18(2) does not, in all instances, require exclusion of the testimony of the witnesses. Offering an opportunity for a continuance may be sufficient to cure any resulting prejudice. *See State v. Sevcik*, 239 N.W.2d 571, 573 (Iowa 1976). We find no prejudice in allowing the witness's testimony in the present case.

## IV. Permitting Evidence Relating to Footprints.

■ Over defendant's objection, the State was permitted to introduce evidence matching footwear impressions on the carpet at the scene of the burglary with discarded sandals located near the area where the perpetrator fled into the woods. He asserts that this was error.

An officer testified that when Gary Murphy identified defendant as the person who used his telephone he indicated that he was not wearing shoes. We believe a legitimate inference could be drawn from the evidence that the discarded sandals were those of the perpetrator of the crime. The testimony of the witness, Darwin Chapman, as to points of similarity between these sandals and the marks on the carpeting, was admissible as a useful comparison for the jury to consider. *See State v. Barrett*, 401 N.W.2d 184, 191–92 (Iowa 1987); *State v. Campbell*, 326 N.W.2d 350, 354 (Iowa 1982).

## V. Sufficiency of Evidence on Charge of Eluding a Law Enforcement Vehicle.

■ Defendant challenges the sufficiency of the evidence to sustain his conviction

for eluding a law enforcement vehicle in violation of Iowa Code section 321.279. His argument focuses on the element of excessive speed. In order to establish the offense charged, it was necessary for the State to show that defendant was driving in excess of twenty-five miles per hour over the posted speed limit in seeking to evade the pursuing vehicle.

Evidence offered by the State in support of this element included the testimony of Officer Mark Brenneman who indicated that after receiving radio contact concerning the burglary he made a U-turn on the highway, turned on his red lights, and pursued the vehicle which the suspect was driving for a distance of at least .6 of a mile. In addition, he was questioned as follows:

Q. Officer, did you have occasion or were you able to get any kind of pace on him to determine how fast he was going?
A. I didn't get a steady pace, no.

Q. Well, did you determine how fast he was going in terms of whether or not he was exceeding the speed limit? A. It was well in excess of sixty miles per hour and I was just keeping pace with him.

Q. Would it be your testimony that he was exceeding sixty-five miles per hour in a thirty-five miles per hour zone? A. Yes.

This testimony was sufficient, we believe, to permit the jury to find that the element of the crime involving excessive speed had been established by the State.

VI. *Refusal to Allow Offer of Proof Concerning Dismissal of Charges Against Accomplice.*

Finally, we consider defendant's claim that it was error for the court to deny him an opportunity to show that a similar burglary charge against his companion at the scene of the break-in had been dismissed by the State. At the time this evidentiary issue arose, it related to the potential bias of the witness who was then scheduled to testify for the State. When the witness indicated, through his own counsel, an intent to claim the fifth amendment, the trial court refused to permit him to be called by either party.

 The district court was unduly abrupt in denying defendant an opportunity to make a record on this issue at the time he sought to do so. Had the witness been called by the State, evidence relating to the dismissal of the charge against him would have been relevant on the issue of his potential bias. However, as a result of the witness not being called, his credibility was never placed in issue. Accordingly, denying the defendant an opportunity to challenge that credibility was harmless. We have considered all issues presented and find no basis for reversal of either conviction.

AFFIRMED.