# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMOND STEELE,

        Defendant-Appellant.

UNPUBLISHED
November 10, 2016

No. 328874
Wayne Circuit Court
LC No. 15-000748-FC

Before: STEPHENS, P.J., and SAAD and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant, as third-offense habitual offender, MCL 769.11, to 100 months to 20 years' imprisonment for each of the two convictions of AWIGBH, 3 to 10 years' imprisonment for the felon-in-possession conviction, and five years' imprisonment for the felony-firearm conviction. We affirm.

This case involves a shooting that occurred on Pingree Street in Detroit. On July 4, 2014, defendant, Chike Kelley, Che Daniels, and Eric Garland were all at Kelley's rental property on Pingree Street. There was a physical altercation between Kelley and defendant. Daniels got between them to prevent them from fighting. Testimony indicated that defendant pulled out a silver revolver and shot Daniels three times, including in the head, shot Kelley in the shoulder once, and then shot at Garland, who was located in the adjoining dining room.

Defendant argues that he was deprived of the effective assistance of counsel when his defense attorney did not request an adjournment or seek assistance to find defendant's father, Demond Steele, Sr. (hereinafter "Steele"), who went missing the day he was scheduled to testify. We disagree.

-1-

Defendant failed to preserve the issue of ineffective assistance of counsel for appeal because he did not bring a timely motion for a new trial or move for a *Ginther*[1] hearing in the lower court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Whether a person has been denied the effective assistance of counsel is a mixed question of law and fact. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). A trial court's factual findings, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective-assistance-of-counsel claim de novo. See *id*. This Court reviews an unpreserved claim of ineffective assistance of counsel for errors apparent on the record. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). Counsel's performance is deficient when it falls below an objective standard of reasonableness under prevailing professional norms. *Id*. A defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Additionally, a defendant must overcome the presumption that the challenged action was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). The burden on a defendant to overcome the presumption is heavy, and, "[i]n general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted). "Trial counsel is responsible for preparing investigating, and presenting all substantial defenses." *Id*.

The record indicates that defense counsel did not plan to call Steele until the third day of trial, when counsel informed the trial court that she intended to amend her witness list to include Steele. Defense counsel said that Steele would provide testimony that would attack Kelley's credibility. The trial court allowed defense counsel to amend the witness list to include Steele.

On the fourth day of trial, Steele spoke with defense counsel off the record and claimed that he wanted to confess to the shooting. Defense counsel informed Steele that he would need to be appointed an attorney if he was going to confess to the crime. An attorney, Jeffrey Schwartz, appeared on the record to inform the trial court that he was there to represent Steele. He stated that he had been unable to locate Steele even after speaking with Steele's family members. On the record, the trial court released Schwartz, but asked that he try to look for Steele one last time and to inform the court if he was found.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defense counsel then proceeded to inform the trial court what Steele's expected testimony would be. Defense counsel stated:

> I did have a number of conversations with [Steele], starting last I want to say Friday, I believe. This trial started on Thursday. He first contacted me on Friday. He had indicated a willingness to testify. He was going to testify about a phone conversation that he had with one of the complainants in this matter, a phone conversation at the hospital. He, also, indicated to me that a number of different sort of versions of events that occurred that day [sic].
>
> Today I was advised by -- that he was going to testify that, in fact, he was at the residence on Pingree that day and that he was the shooter. When I spoke with him he was-- At that point we went and spoke with you. The [c]ourt indicated that-- I felt he needed to talk to a lawyer. If he was going to testify in that manner for sure he needed a lawyer before he incriminated himself. And I came in to talk to you about getting a lawyer appointed for him and the [c]ourt did that, and now it appears that he is not here any longer.
>
> So I honestly don't know what his testimony would be. I really don't know. But he's gone.

The trial court explained that the date and time for trial had been set and ordered the trial to continue. Defense counsel rested. Before closing arguments, the trial court asked defense counsel one last time if she had made contact with Steele, but defense counsel said that she had not seen him. The trial court then stated, "[Steele] has not contacted any of my staff or made any presence known. So I just want the record reflecting with regard to that." There was no other mention of Steele, and the trial concluded with a verdict on the fifth day.

Defendant argues that the failure to seek an adjournment or assistance in locating Steele when he could not be found constituted performance that fell below an objective standard of reasonableness because without Steele's testimony, defendant did not have a strong defense and his case "more or less depended entirely on attacking the credibility of the witnesses the prosecution brought forth."

Defendant has not shown that defense counsel's inaction was unreasonable because there is no indication that Steele would have been available to testify at a later time. Defendant relies on *People v Tommolino*, 187 Mich App 14, 18; 466 NW2d 315 (1991), where an attorney's failure to seek an adjournment to procure two alibi witnesses was deemed not objectively reasonable and considered "unsound strategy." However, the instant case is unlike *Tommolino*, because this Court, in *Tommolino*, acknowledged that the two alibi witnesses could have been subpoenaed to testify. *Id*. Here, Steele's latest iteration of his probable testimony was that he had been the shooter, but defense counsel could not subpoena Steele and require him to either confess to the crime or invoke his Fifth Amendment right. The Michigan Supreme Court has held that an attorney cannot compel a witness to appear before a jury knowing the witness will

claim his Fifth Amendment privilege against self-incrimination. *People v Dyer*, 425 Mich 572, 576-579; 390 NW2d 645 (1986).[2] Defendant cannot show that defense counsel's inaction fell below an objective standard of reasonableness

In addition, defendant has failed to show that counsel's inaction resulted in prejudice. Defendant argues that defense counsel's failure to seek an adjournment was prejudicial because the outcome would have been different had Steele confessed to the shooting. However, nothing in the record shows that Steele would have ever been available, and even if he was, that he would have actually waived his Fifth Amendment right and confessed to the shooting.

In *Tommolino*, 187 Mich App at 19-20, this Court concluded that the defendant had not been prejudiced when his defense counsel failed to request an adjournment. There, the defendant had testified that one of the alibi witnesses was his ex-fiancée and she "indicated a willingness" to testify. *Id*. at 20. However, the Court emphasized that no evidence was presented that showed that the alibi witness would have testified as the defendant claimed. *Id*. Here, while defense counsel said Steele had indicated a willingness to testify and confess, she was not sure if Steele would have actually done so. She said, "I honestly don't know what [Steele's] testimony would be. I really don't know. But he's gone." Steele never signed an affidavit confessing to the crime, never went on the record claiming he would testify, and never appeared in court to waive his Fifth Amendment right.

Also, there is no indication that the trial court would have granted an adjournment or assistance (which, necessarily, would have required an adjournment, given the timing of events). Indeed, there was a high likelihood that the trial court would have denied the request, considering that Steele inexplicably went missing from the courthouse[3] on the fourth day of a five-day trial, the case was ready for closing arguments, and the trial court had once previously adjourned the date set for trial. Defendant cannot show the requisite prejudice.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Henry William Saad
/s/ Patrick M. Meter

---

[2] The fact that Steele could not be found on the day he was scheduled to testify supports the proposition that trial counsel had reason to believe Steele would likely invoke his Fifth Amendment right if subpoenaed.

[3] He had been there earlier and departed.

-4-