# IN THE COURT OF APPEALS OF IOWA

No. 21-0352
Filed March 2, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KIM TIELEBEIN,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Buchanan County, Kelly M. Lekar, Judge.

Kim Tielebein appeals from his conviction and the court costs assessed in his sentencing order. **CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

Kim Tielebein appeals from his conviction of eluding or attempting to elude a law enforcement vehicle, enhanced as a habitual offender, in violation of Iowa Code section 321.279(2)(b) (2020).[1] He argues there was insufficient evidence to support the findings that he reached a speed of more than twenty-five miles per hour (mph) in excess of the speed limit. He also challenges the sentence imposed ordering him to pay court fees for dismissed misdemeanor traffic violations.

**Background Facts and Proceedings.**

On November 5, 2020, Jemini Tielebein called 911 to report her father, who she identified as Kim Tielebein, had driven off in a black Trailblazer while "all high" on methamphetamines. She confirmed he did not have a valid driver's license. After learning about the general direction he headed, two Buchanan County deputies, Deputy Matthew Cook and Sergeant Chris Chesmore, separately began pursuit. Sergeant Chesmore located the vehicle, pulled up next to it at an intersection, and identified the driver as Tielebein. Once he identified Tielebein, Sergeant Chesmore yelled, "Kim stop" and turned on his emergency lights. Tielebein did not stop, and Chesmore initiated his siren. Sergeant Chesmore began pursuing Tielebein on a gravel road with a fifty-five mph speed limit. Driving erratically, Tielebein reached speeds of sixty-two mph on the gravel road and drove through several stop signs. On the paved roads, the deputies, now in

---

[1] The jury also found Tielebein guilty of operating while intoxicated (OWI), second offense, but he does not appeal from that conviction. The district court sentenced Tielebein to two years in prison on the OWI conviction and fifteen years on the eluding conviction, with the two sentences running consecutive to each other but concurrent to a sentence involving a separate parole revocation case.

tandem, began "pacing" or maintaining a steady distance between the vehicles. At times, they exceeded a speed of eighty mph. The front camera on Deputy Cook's vehicle recorded the speeds and reflected a top speed of ninety-two mph in the fifty-five mph zone. The pursuit continued on paved roads until stop sticks deflated the vehicle's tires.

Tielebein was tried for OWI and eluding at a jury trial in February 2021. Some of the evidence about the vehicle speeds was offered without objection, including the video from Deputy Cook's vehicle that referenced the speed he was traveling during the pacing activity. Tielebein objected twice to Sergeant Chesmore's testimony about the speeds traveled by simply stating "foundation." The district court overruled those objections.

After all the evidence was presented, Tielebein moved for a directed verdict, arguing the State failed to prove that Tielebein had exceeded the speed limit by twenty-five mph or more and that the State lacked the necessary foundation to prove the speeds. The court denied the motion. Tielebein did not present any evidence in his defense.

After deliberations, the jury found Tielebein guilty of both charges. After sentencing, Tielebein timely appealed.

**Standard of Review.**

"We review challenges to the sufficiency of the evidence for correction of errors at law." *State v. Veal*, 930 N.W.2d 319, 328 (Iowa 2019). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence." *State v. Button*, 622 N.W.2d 480, 483 (Iowa 2001) (citation omitted). "Consequently, where the

record contains substantial evidence, 'we are bound by the jury's finding of guilt.'" *Id.* (citation omitted).

Insofar as Tielebein preserved a challenge to the admission of specific evidence, we review the court's evidentiary rulings for an abuse of discretion. *See State v. Rodriguez*, 636 N.W.2d 234, 239 (Iowa 2001).

"We review the district court's restitution order for errors of law." *State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991). We seek to "determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001).

**Analysis.**

**A. Was There Sufficient Proof of Tielebein's Speed to Support an Eluding Charge?**

Tielebein argues the district court abused its discretion in overruling foundational objections and erred in denying his motion for judgment of acquittal[2] because there was insufficient evidence about his speed. More specifically, he contends there was a "lack of proof that the speedometers in the squad cars, driven by Chesmore and Cook, had ever been calibrated and the fact that there was no testimony that either had been trained in the technique of pacing while in pursuit of another vehicle." To prove the eluding charge, the jury instructions required the State to show:

> 1. On or about the 5th day of November, 2020, Mr. Tielebein was driving a motor vehicle.

---

[2] Technically, Tielebein moved for directed verdict. "For purposes of this appeal we will treat [Tielebein's] motion for directed verdict as a motion for judgment of acquittal." *State v. Adney,* 639 N.W.2d 246, 249 n.2 (Iowa Ct. App. 2001).

2. Mr. Tielebein willfully failed to bring the motor vehicle to a stop or otherwise eluded or attempted to elude a marked official law enforcement vehicle driven by a uniformed peace officer after being given a visual and audible signal to stop.

3. In doing so Mr. Tielebein exceeded the speed limit by twenty-five [mph] or more.

*See State v. Canal*, 773 N.W.2d 528, 530 (stating the jury instructions become the "law of the case" when there is no objection). To meet this burden, the State presented testimony from two law enforcement officers on Tielebein's excessive speeds as he tried to drive away from the officers. To counter that proof, Tielebein complains the State failed to establish the necessary foundation to opine on his speed. To allow this testimony, Tielebein contends the State had to show the speedometers of the officers' vehicles were calibrated, or at a minimum, the deputies were trained to employ the pacing technique they used to determine the speeds. Rather than using radar to pin down Tielebein's speeds, the deputies used a pacing technique. Sergeant Chesmore explained:

Q. Okay. When you're following the vehicle in the way that you're talking about, how are you determining—are you using your radar, or how are you determining how fast the vehicle[ is] going? A. I'm pacing him with my speedometer.

Q. What does that mean? A. I'm looking at my speedometer to determine how fast I am going and whether or not I'm catching up to him, not catching up to him.

Q. Okay, and is that something you've learned through your training and also just in your work as a deputy? A. It is.

Q. So when you're talking about speeds, you're talking about comparing your speed with the distance between the vehicles, and if you're gaining or losing ground? A. Yes.

. . . .

Q. What's the speed limit? A. Fifty-five.

. . . .

Q. Okay. What were the speeds like on the paved roadway? A. For the majority of the time, there was 80, and at—towards the very end of the chase—

DEFENDANT: Objection. Renewed objection to foundation.

THE COURT: Overruled.

A. Towards the very end of the chase, it—we topped at 92 miles per hour.

. . . .

Q. Okay, so when you're hitting speeds of 80, up to 90 or 92, it's a 55-mile-per-hour zone? A. That is correct.

Q. And again, you're not alleging that you were using your radar while chasing this vehicle, you were pacing the vehicle based on your experienced using what you're going and if you're able to catch up or falling behind; is that correct? A. That's correct.

. . . .

Q. Okay, and I'm going to back you up a little bit back before the crash when you were talking about higher speeds, that, at some point being, I think, 90 or 92 miles an hour. At that point, was that when you were attempting to catch up, or was that the steady speed between you and the vehicle in front of you? A. That was the steady speed.

Q. So it wasn't like you got behind and the only reason you were going that fast was to catch up? A. You're—that's correct.

We first note that "[p]acing has been determined to be an adequate procedure for determining speed." *State v. Sorenson*, No. 14-1101, 2016 WL 718984, at *2 (Iowa Ct. App. Feb. 24, 2016) (citing *State v. Bedwell*, 417 N.W.2d 66, 70 (Iowa 2006)). In *Sorenson*, the officer testified that his speedometer had not been calibrated, but the court found the pacing to be reliable. *Id.*

Beyond the pacing proof and to further bolster its case, the State offered video evidence showing that the in-car cameras captured speeds as the deputies followed Tielebein on a chase. Those videos were admitted as evidence without objection.[3] Each deputy testified to their training and experience in the pacing technique. And Deputy Cook confirmed his speedometer was calibrated. Tielebein presented no evidence to dispute these statements. And while Tielebein objected on foundation grounds, he only now, on appeal, identifies the specifics

---

[3] In the video from Deputy Cook's vehicle, a jury could conclude that the pacing was consistent and that the speeds displayed on the screen, at times, exceeded ninety mph.

underlying the foundation objection. *See* 7 Laurie Kratky Doré, Iowa Practice Series: Evidence § 5.103:4 (November 2021 update) ("Challenges to evidence on foundational grounds must specify the particulars in which the foundation is lacking; the objection 'no proper foundation' is insufficient."). Because Tielebein failed to properly raise a foundational challenge to the evidence, we need not review the district court's decision to admit it.

Between the deputies' testimony and the video evidence of the car chase, substantial evidence supports that Tielebein reached speeds of more than twenty-five mph over the speed limit.

Still, even if the foundation objection had the requisite detail, Tielebein could not prevail on this issue. "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *State v. Biddle*, 652 N.W.2d 191, 197 (Iowa 2002). "We review the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* Under this rubric, we find substantial evidence that Tielebein traveled in excess of twenty-five mph as he eluded the deputies on the chase. We affirm the conviction. We now turn to the sentencing issue.

**B. Was Ordering Payment of Costs on Dismissed Charges an Error?**

After the verdicts on the OWI and the eluding charges, Tielebein pled guilty to the enhancements as a habitual offender. During the record made on the guilty plea, the district court inquired if there was any agreement between the State and Tielebein over the enhancement plea agreement. None was formulated, so the parties said no. At the sentencing hearing, the State dismissed four other

companion simple misdemeanor cases involving traffic violations. The district court further ordered that Tielebein was without the ability to pay category "B" restitution.[4] In the sentencing order, the court noted:

> Upon the recommendation of the State and/or under the terms of the plea agreement and/or by reason of acquittal, the following counts/cases are dismissed: STA0072915, STA0072916, STA0072917, STA0072918. Defendant is ordered to pay court costs on these counts/cases.[5] *Pursuant to the plea agreement*, if restitution is due on any of these counts/cases, the Defendant is ordered to pay such restitution.

(Emphasis added.)

Tielebein appeals the sentencing order requiring him to pay these costs. "We acknowledge that a sentencing order that imposes an obligation on a defendant to pay court costs not authorized by law would be illegal." *State v. McMurry*, 925 N.W.2d 592, 596 (Iowa 2019). Tielebein argues the requirement to pay the court costs for the dismissed charges is an illegal sentence because the district court found he did not have the reasonable ability to pay courts costs. He also maintains that because the district court incorrectly referenced a plea agreement that required his payment of restitution, the sentence should be

---

[4] Iowa Code section 910.1(2) defines "[c]ategory 'B' restitution" to mean:
> the contribution of funds to a local anticrime organization which provided assistance to law enforcement in an offender's case, the payment of crime victim compensation program reimbursements, payment of restitution to public agencies pursuant to section 321J.2, subsection 13, paragraph "b", court costs, court-appointed attorney fees ordered pursuant to section 815.9, including the expense of a public defender, and payment to the medical assistance program pursuant to chapter 249A for expenditures paid on behalf of the victim resulting from the offender's criminal activities including investigative costs incurred by the Medicaid fraud control unit pursuant to section 249A.50.

[5] The State notes that only case STA0072918 has court costs assessed, and court records show no costs assessed for the other three traffic charges.

vacated. *See State v. Ackiss*, No. 18-1787, 2019 WL 4678184, at *2 (Iowa Ct. App. Sept. 25, 2019) (finding that where the order referenced payment of court costs under a non-existent plea agreement, the order should be corrected and the case remanded for a corrected order on the court costs). The State concedes that if we reach the merits of Tielebein's claim,[6] the sentence is illegal and the case should be remanded for an order removing the court cost payment obligation from the order. *See McMurry*, 925 N.W.2d at 596; *State v. Davis*, No. 19-0453, 2020 WL 7868118, at *11 (Iowa Ct. App. Dec. 16, 2020) (remanding to remove the court cost assessment from the sentencing order where the court had determined the defendant had no reasonable ability to pay).

We agree with this course and remand to the district court for the limited purpose of correcting the sentencing order by removing the court-cost obligation.

**Disposition.**

We find substantial evidence supported Tielebein's conviction for eluding or attempting to elude a law enforcement vehicle. On Tielebein's claim over the court costs assessed on charges dismissed, we remand to the district court for an order

---

[6] The State maintains that Tielebein could not appeal the simple misdemeanor claims and in any event did not preserve error, but we choose to proceed to the merits of the issue because his appeal is over the sentencing order in the case at hand. *See State v. Abbasi*, No. 14-1576, 2015 WL 4935705, at *2 (Iowa Ct. App. Aug. 19, 2015) ("Because the costs for [the dismissed simple misdemeanor case] were assessed through the sentencing order in [the serious misdemeanor case] and we may consider the claim of an illegal sentence at any time, we find this issue is properly before the court." (citing Iowa R. Crim. P. 2.24(5)(a)).

correcting the sentencing order and removing the payment requirement for the category "B" costs.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND REMANDED.**