# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEMETRICE MAURICE PATRICK,

Defendant-Appellant.

UNPUBLISHED
June 28, 2016

No.  325867
Wayne Circuit Court
LC No.  14-006756-FC

Before:  JANSEN, P.J., and O'CONNELL and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of armed robbery, MCL 750.529, one count of first-degree home invasion, MCL 750.110a(2), and one count of larceny in a building, MCL 750.360. He was sentenced as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 18 to 30 years for each armed robbery conviction, 7½ to 18 years for his first-degree home invasion conviction, and 5 to 48 months for his larceny in a building conviction. We affirm defendant's convictions, but vacate defendant's sentences and remand for resentencing.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from his participation in a home invasion, armed robbery, and larceny at the apartment of Eric Cheeks and Chantel Lewis on July 23, 2014, in Romulus, Michigan.

Before the incident, Lewis and Cheeks knew defendant and defendant's friend, Isaiah Lindsey, from their presence at the apartment complex. In the past, Lewis and Cheeks had friendly interactions with defendant and Lindsey. Earlier in the day on July 23, Lewis briefly spoke with both defendant and Lindsey. That evening, she spoke with Lindsey on her stoop for approximately 90 minutes. During their conversation, she was able to see defendant socializing nearby. After their conversation, she watched Lindsey join defendant when he left her stoop.

Lewis and Cheeks testified that, after midnight, three armed men broke into their apartment, held them and their four-year-old child at gunpoint in their child's bedroom, and demanded money. One of the intruders wore a hoodie that was pulled down to his eyebrows and up to his nose, but Lewis immediately recognized that person as defendant based on his brown

-1-

eyes, his voice, and the unique "LV"[1] tattoo near his left eye. Cheeks did not see defendant's eye tattoo, but he recognized the intruder as defendant because he was wearing clothing that Cheeks had seen defendant wearing earlier that day. Lewis and Cheeks also identified a second masked gunman as Lindsey, as they recognized his voice, his unique shoes, and the red sty that was in his eye that day.[2]

Ultimately, after the intruders left the bedroom, Cheeks discreetly contacted the police with a cell phone concealed in his son's bed. When the police arrived, Cheeks, Lewis, and their child escaped through a second-story window.

Later, as Cheeks was being interviewed in an ambulance, he saw defendant and Lindsey walking down the street and alerted the police that they were the robbers. Lewis also identified the two men. Police arrested defendant and Lindsey soon afterward.

Pursuant to a plea agreement, Lindsey testified for the prosecution at trial. He admitted that he, along with defendant and two other men, broke into the apartment in search of money and stole several items. The police later found items taken during the incident in a storage room across from the apartment of Elaine Watkins, a resident of the apartment complex that defendant referred to as his "aunt."

Despite this evidence, defendant argued at trial that he was misidentified as one of the perpetrators, denying any involvement in the crime when he testified on his own behalf. He was convicted as indicated *supra*. He now appeals as of right.

## II. ADMISSION OF HEARSAY EVIDENCE

At trial, Cheeks testified that Emilio Soria, a friend of defendant, approached him on two occasions, offered him money, and attempted to dissuade him from identifying defendant as one of the perpetrators. On appeal, defendant argues that Soria's statements should have been excluded because they were inadmissible hearsay or, alternatively, because they violated MRE 403. We disagree.

## A. STANDARD OF REVIEW

Because defendant did not object to this evidence on hearsay or MRE 403 grounds,[3] this issue is unpreserved and reviewed for plain error affecting defendant's substantial rights. *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003), citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To demonstrate such an error, a defendant must show that (1)

---

[1] The "LV" was the monogram commonly seen on Louis Vuitton apparel and accessories.

[2] Neither Lewis nor Cheeks could identify the third gunman in the bedroom.

[3] The defense objected to the admission of these statements on the basis of "inviting narrative." However, the trial court subsequently considered, without any prompting by the defense, whether the statements constituted inadmissible hearsay.

an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

B. ANALYSIS

MRE 801(c) defines "hearsay" as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pursuant to MRE 802, hearsay is not admissible unless it falls under one of the exceptions to the hearsay rule provided by the Michigan Rules of Evidence. However, "[a]n out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay under MRE 801(c)." *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014).

During Cheeks' conversations with Soria, which occurred after Cheeks identified defendant as one of the perpetrators to the police, Cheeks agreed to accept money and stated, *inter alia*, that he only saw Lindsey during the offense, that he did not care who was prosecuted for the crime, and that he would not appear in court. At trial, however, Cheeks testified that he never accepted any money and never intended to fail to appear in court. Instead, he merely entertained Soria's conversations in an attempt to discover the identity of the third robber.

As the trial court concluded, the record reveals that Soria's statements were offered to explain Cheeks' statements to Soria, which had the potential of undermining Cheeks' testimony and identifications of defendant, and not for the truth of the matter asserted. This is especially apparent given the fact that the prosecutor did not reference Soria's statements at all during her closing argument, let alone to establish defendant's identity or guilt. Because Soria's statements were not offered to prove the truth of the matter asserted, they did not constitute hearsay. Thus, their admission was not plain error. See *Carines*, 460 Mich at 763-764.

Defendant further contends that even if Soria's statements were minimally relevant, they should have been excluded under MRE 403, as "[t]he statements, if believed, centered on allegations that defendant was having a friend attempt to persuade a complainant [that] he was not present and thus could not have committed any of the offenses." Under MRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Again, it is apparent that Soria's statements were admitted to explain and provide a context for Cheeks' responses, not to prove that defendant did, in fact, ask a friend to deter Cheeks from testifying. Additionally, as discussed further below, identification was a key issue in this case, and we reject defendant's claim that the potential prejudice of this evidence

substantiality outweighed its probative value in explaining Cheeks' previous statements related to his identification of defendant.

Nevertheless, even if we assume, arguendo, that the testimony should have been excluded under MRE 403, defendant has failed to establish that the error affected the outcome of the proceedings. Overwhelming evidence of defendant's identity was presented at trial. Thus, we find no basis for concluding that defendant was prejudiced by the admission of this testimony, that the admission of this evidence resulted in the conviction of an actually innocent defendant, or that it affected the judicial proceedings in a manner that compels reversal. See *Carines*, 460 Mich at 763-764.

## III. OFFENSE VARIABLE SCORING

Next, defendant argues that the trial court erroneously scored offense variables ("OV") 4, 10, and 19 of the sentencing guidelines. We agree that the trial court erroneously scored OV 19.

## A. STANDARD OF REVIEW

Defendant preserved these challenges by objecting to the trial court's scoring of OV 4, 10, and 19 at sentencing. See MCL 769.34(10); *Jackson*, 487 Mich at 796.

> [T]he circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnotes omitted).]

## B. OV 4

The statutory basis of OV 4 is MCL 777.34, which provides for an assessment of points if a victim sustained serious psychological injury. MCL 777.34(1). Ten points shall be assessed if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). A trial court is required to assess "10 points if the serious psychological injury *may* require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2) (emphasis added). Evidence that a victim felt angry, hurt, violated, frightful, or fearful after the offense—or evidence that "a victim was left feeling 'pretty angry,' and 'try[ing] to block out the memory[]' of a crime"—is sufficient to uphold an assessment of 10 points for OV 4. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012) (quotation marks and citations omitted). See also *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014) ("The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated.").

Here, Cheeks and Lewis testified that defendant and others broke into their apartment in the middle of the night and held them, along with their four-year-old child, at gunpoint while demanding money. To escape, the victims "threw" the child out a second-floor window, trusting the police officers waiting below to catch the child. Cheeks testified that he was "terrified for his

-4-

son." Lewis—who was wearing very little clothing due to the fact that she discovered the men in her home as she was exiting the shower—also jumped out the window, followed by Cheeks. She later described the robbery as "a nightmare." She testified that she was "really scared," did not know if they would be shot, and was "just shook." Testimony from responding police officers also confirmed that the victims remained visibly distressed and "very upset" following the incident.

On this record, the trial court did not clearly err in concluding that a preponderance of the evidence supported a finding that the victims sustained serious psychological injury, which *may* require professional treatment. See *Hardy*, 494 Mich at 438.

## C. OV 10

OV 10 addresses exploitation of a vulnerable victim. The trial court shall assess 15 points if "[p]redatory conduct was involved." MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). Predatory conduct encompasses "only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct' involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (citation omitted). In order to find that a defendant engaged in predatory conduct, a trial court must conclude that (1) the defendant engaged in preoffense conduct, (2) the defendant directed that conduct toward "one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation[,]" and (3) the defendant's primary purpose in engaging in the preoffense conduct was victimization. *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008). A trial court may not assess 15 points for OV 10 "*entirely*" or "*solely* on the basis of the predatory conduct of a defendant's co-offenders." *People v Gloster*, ___ Mich ___, ___; ___ NW2d ___ (2016) (Docket No. 151048); slip op at 1, 10-11 (emphasis added).

A preponderance of evidence in the record supports the trial court's finding that defendant engaged in preoffense conduct directed at a particular victim, Lewis, with the intent to victimize her by subsequently breaking into the victims' home and robbing them. As the trial court observed, the testimony established that defendant and Lindsey pursued a friendship or affiliation with Lewis by separate interactions with her. Lindsey testified that he and defendant received information from another individual that a significant sum of money was inside the victims' apartment, although it is not clear from the record when they received this information. The testimony also established that defendant and Lindsey both spoke with Lewis on the day of the offense when she was visiting a nearby apartment complex that she was considering moving into. Then, according to Lindsey's testimony, the offenders decided to break into the apartment later that night based on (1) their belief that the victims were moving, which they may have surmised from their encounters with Lewis earlier that day, (2) their assumption that the victims' child would not be present at the apartment as a result, and (3) their belief that no one was home when no one responded to their knocking at the door in the middle of the night. The stated reasoning behind the timing of the crime, and the fact that Lindsey engaged in a 90-minute conversation with Lewis within hours of the break-in after defendant and Lindsey spoke with her earlier that day, provides a preponderance of evidence that victimization was the primary

purpose of both defendant's and Lindsey's interactions with Lewis prior to the offense. Thus, the trial court did not clearly err in finding that defendant, and not just Lindsey, engaged in conduct before the offense, with the primary purpose of victimization, which was directed toward a specific victim. See *Cannon*, 481 Mich at 161-162.

Defendant claims that the 15-point score was improper because Lewis and Cheeks did not "suffer[] from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation." See *id*. However, even if Lewis and Cheeks were not inherently vulnerable victims, the external circumstances of this case rendered them vulnerable, as defendant and his co-offenders waited to commit the crime until the middle of the night when the victims were inside their locked home, Cheeks was asleep in bed with his son, and Lewis was exiting the shower. See *People v Kosik*, 303 Mich App 146, 160-161; 841 NW2d 906 (2013), citing *Huston*, 489 Mich at 466. Given the time of the offense, the predictable fact that the victims would be sleeping or engaging in other unsuspecting activities given the time of day, and the fact that defendant and his co-offenders were armed and outnumbered the victims, it is clear that the victims were susceptible to injury, physical restraint, or persuasion. See *Cannon*, 481 Mich at 161-162.

The trial court did not clearly err in finding that the circumstances of this case supported a 15-point score for OV 10. See *Hardy*, 494 Mich at 438.

D. OV 19

OV 19 addresses interference with the administration of justice. Defendant argues in his brief on appeal that the trial court erroneously assessed 10 points for this variable. However, the record shows that the trial court actually assessed 15 points for OV 19. A court shall assess 15 points if "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). The trial court shall assess 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). A defendant interferes with the administration of justice by "oppos[ing] so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). A defendant's act of instructing a victim or witness to not reveal or disclose a defendant's conduct is sufficient to support a 10-point score for OV 19. *Id*. at 344.

Here, the trial court assessed 15 points because it believed that defendant attempted to interfere with the rendering of emergency services by stealing the victims' cell phones. Lewis testified that, during the offense, she asked a man holding a large gun, who was not defendant, if she could retrieve her phone from the bathroom. That man then asked, "Where's everybody's phones at[?]", entered the bathroom, and took Lewis' phone. Lindsey then asked, "Where that money?" Cheeks then stated that he did not know where his phone was in the apartment, even though he knew that it was concealed in his son's bed. Subsequently, Cheeks asked if he could close the bedroom door to prevent his son from witnessing the incident, and one of the robbers said yes. Once the door was closed, Cheeks called the police with the cell phone in his son's room.

-6-

In light of the victims' testimony, it is clear that the trial court assessed 15 points solely based on the conduct of perpetrators other than defendant. This was improper, as MCL 777.49 does not provide that points may be assessed solely based on a co-offender's conduct in multiple-offender situations. See *Gloster*, ___ Mich at ___; slip op at 1-2, 6-8 (utilizing a similar analysis in reviewing a trial court's assessment of points under OV 10). Further, given the totality of the co-offenders' questioning and interactions with the victims, *i.e.*, asking where the money and other valuables were located, it appears more likely than not that the offenders sought the victims' phones because they were valuable items, not because they intended to interfere with the rendering of emergency services. Thus, the trial court clearly erred in assessing 15 points for OV 19. See *Hardy*, 494 Mich at 438.

However, the trial court also concluded that "defendant interfered with the administration of justice by having [Soria] attempt to get some sort of a statement or offer [Cheeks] some money to change his testimony to say that [defendant] wasn't involved," and later attempting to call Soria as a witness despite the possibility that this could violate Soria's right against self-incrimination. We conclude that this finding is not supported by a preponderance of evidence in the record. Cheeks testified that Soria spoke to him on three occasions and offered him money in an attempt to influence his testimony and dissuade him from identifying defendant. However, as explained *supra*, this evidence was not offered to prove the truth of the matter asserted; it was offered to explain Cheeks' statements to Soria. There is no other evidence in the record demonstrating that defendant directly or indirectly attempted to influence Cheeks' testimony.

Moreover, Cheeks' testimony shows, at most, that he knew that Soria and defendant were friends, and that their friendship may have been the reason why Soria offered Cheeks money to conceal defendant's conduct. There is no evidence in the record confirming that defendant asked Soria to influence Cheeks' testimony or disproving the possibility that Soria decided, on his own in light of his friendship with defendant, that he should convince Cheeks not to testify. To the contrary, the facts established by Cheeks' testimony are that Soria tried to convince Cheeks to change his testimony, and Cheeks personally *assumed* that defendant and Soria "must be best friends" given the manner in which Soria was attempting to influence Cheeks. Thus, the trial court erred in assessing points for OV 19. See *Hardy*, 494 Mich at 438.

Without these points, defendant's OV score would have been 56 points instead of 71 points. This point reduction places him in OV Level III instead of OV Level IV and changes the minimum range calculated under the sentencing guidelines from 135 to 450 months to 126 to 420 months. See MCL 777.62; MCL 777.21. Because the scoring error altered the minimum range calculated under the sentencing guidelines, defendant is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89-91, 91 n 8; 711 NW2d 44 (2006) (stating that a defendant is entitled to resentencing if his original sentence was based on incorrectly scored sentencing guidelines and the error altered the appropriate guidelines range).

E. JUDICIAL FACT-FINDING

Defendant also contends that the trial court's scoring of OV 4, 10, and 19 was based on unconstitutional judicial fact-finding. In *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), the Michigan Supreme Court held that Michigan's sentencing guidelines previously violated the Sixth Amendment to the extent that they "*require[d]* judicial fact-finding beyond

facts admitted by the defendant or found by the jury to score offense variables . . . that *mandatorily* increase[d] the floor of the guidelines minimum sentence range[.]" *Id*. at 364. Accordingly, in order to remedy the Sixth Amendment violation, the Court held that Michigan's sentencing guidelines are now advisory, but sentencing judges remain required to consult the guidelines and " 'take them into account when sentencing.' " *Id.* at 391 (citation omitted).

Given our conclusion that OV 19 should have been scored at zero points and, as a result, defendant is entitled to resentencing, this issue is moot, and we need not consider it. *People v Sours*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 326291), slip op at 3.

## IV.  JUROR MISCONDUCT

Next, in a supplemental brief, defendant argues that he is entitled to a new trial on the basis of juror inattentiveness, as demonstrated by the fact that the trial court twice instructed jurors to "stay awake."  We disagree.

### A.  STANDARD OF REVIEW

As defendant acknowledges, this issue is unpreserved and reviewed for plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

### B.  ANALYSIS

A criminal defendant has a constitutional right to a fair and impartial jury.  US Const, Am VI; Const 1963, art 1, § 20; *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). Misconduct on the part of a juror does not automatically require a new trial. *Miller*, 482 Mich at 551.  A new trial should be granted based on juror misconduct only if substantial harm was done to the defendant, meaning that:

> the misconduct was such that it affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment.  A new trial will not be granted if no substantial harm was done thereby to the defendant, even though the misconduct may merit a rebuke from the trial court if brought to its notice. [*People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997).]

"Prejudice must be shown, or facts clearly establishing the inference that it occurred from what was said or done," and the "error must appear affirmatively." *People v Fetterley*, 229 Mich App 511, 545; 583 NW2d 199 (1998), citing *People v Nick*, 360 Mich 219, 227, 230; 103 NW2d 435 (1960).

In *People v Dunigan*, 299 Mich App 579, 586; 831 NW2d 243 (2013), this Court considered a defendant's right to a new trial when a juror "had been observed to be sleeping." This Court held that "[t]he trial court properly admonished the juror" and noted that "there is no indication of what, if any, testimony the juror missed." *Id.*  This Court further stated that the "defendant fail[ed] to articulate how he was prejudiced" and, instead, made only "the bare assertion that the juror could not fairly and competently consider the charges against him and therefore was not qualified to give a verdict." *Id.*  Accordingly, the Court concluded that there was no factual support for the defendant's claim. *Id.*

In this case, the record does not establish that defendant endured substantial harm from any juror misconduct. First, it does not definitively establish that any juror actually fell asleep. Further, there is no evidence of the number of jurors who were allegedly inattentive or asleep, and there is no indication of how long any juror was not "awake." As such, it is impossible for us to determine the extent of the testimony that any juror allegedly missed.

Instead, the record reveals two isolated incidents, one near the end of the first day of trial and one near the end of the second day of trial, during which the trial court, on its own initiative, interrupted defense counsel's cross-examination to admonish the jury to "stay awake." There is no indication that the jurors actually missed any testimony, as in each instance, defense counsel simply repeated the question that he asked before the court's interruption, and the witness provided a response. On appeal, defendant argues that "it is likely [that] the jury failed to concentrate during the cross examination when the witnesses were impeached with prior statements and inconsistencies," but there is no support in the record for this assertion. Likewise, we discern no other basis for concluding that defendant was prejudiced by any juror's conduct. Thus, he has failed to establish a plain error affecting his substantial rights.

For the same reasons, he has failed to demonstrate that defense counsel's failure to object or seek a mistrial constituted ineffective assistance because he has failed to establish the requisite prejudice. See *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994).

## V. GREAT WEIGHT OF THE EVIDENCE

Next, in his supplemental brief, defendant argues that his convictions must be reversed because the evidence preponderates so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. We disagree.

### A. STANDARD OF REVIEW

Because defendant did not move for a new trial below, this issue is unpreserved and reviewed for plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

### B. ANALYSIS

The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. [U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination. [*Musser*, 259 Mich App at 218-219 (quotation marks and citations omitted; alteration in original).]

See also *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998); *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008).

The only element challenged by defendant on appeal is identification. See *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008) ("[I]dentity is an element of every offense."). He claims that his conviction was against the great weight of the evidence because the jury's finding that he committed the offense was based on conflicting and incredible testimony. Contrary to defendant's claims, the eyewitness testimony and circumstantial evidence heavily established defendant's identity. Both victims were familiar with defendant; both victims positively identified him and were certain of their identifications; and one of defendant's co-offenders admitted his involvement in the offense and identified defendant as one of his accomplices. As such, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand.

Despite this record, defendant contends that the verdict was against the great weight of the evidence because portions of the victims' trial testimony were inconsistent with their previous descriptions of the incident and the perpetrators. The credibility of identification testimony is for the trier of fact to resolve, *Lemmon*, 456 Mich at 643, 646-647, and conflicting testimony and questions regarding the credibility of witnesses are not sufficient grounds for granting a new trial, *id*. at 643, 647. We defer to the jury's credibility determinations "unless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities[.]" *Id*. at 643-646 (citation omitted). That was not the case here. Even though defendant testified that he was not involved in the crime, and defense counsel vigorously cross-examined the witnesses on their descriptions of the perpetrators and provided reasons during his closing argument for why the jury should conclude that defendant was not a perpetrator, it was up to the jury to determine whether the testimony of each witness was reliable and credible in light of the factors explored by the defense. *Lemmon*, 456 Mich at 643-644.

We reject defendant's claim.

## VI. PROSECUTORIAL MISCONDUCT

Defendant next argues, in his supplemental brief, that the prosecution intimidated Soria into declining to testify and knowingly presented perjured testimony. We disagree.

## A. STANDARD OF REVIEW

Defendant failed to preserve both claims of prosecutorial misconduct by "contemporaneously object[ing] and request[ing] a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *Unger*, 278 Mich App at 234-235. We review unpreserved issues of prosecutorial misconduct for plain error affecting substantial rights. *Bennett*, 290 Mich App at 475-476, citing *Carines*, 460 Mich at 763. We review prosecutorial misconduct claims on a case-by-case basis, examining the prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010); *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007).

## B. WITNESS INTIMIDATION

Defendant first claims that the prosecutor, and later the trial court, improperly threatened or intimidated Soria into not testifying.[4] We disagree.

A defendant has a constitutional right to call witnesses to testify in his defense. US Const, Ams VI, XIV; Const 1963, art 1, §§ 13, 20; *Yost*, 278 Mich App at 379. Additionally, "[i]t is well settled that a prosecutor may not intimidate witnesses in or out of court." *People v Layher*, 238 Mich App 573, 587; 607 NW2d 91 (1999), aff'd 464 Mich 756 (2001). "Attempts by the prosecution to intimidate witnesses from testifying, if successful, amount to a denial of a defendant's constitutional right to due process of law." *People v Hill*, 257 Mich App 126, 135; 667 NW2d 78 (2003). "However, a prosecutor may inform a witness that false testimony could result in a perjury charge." *Layher*, 238 Mich App at 587. Cf. *People v Robbins*, 131 Mich App 429, 440; 346 NW2d 333 (1984) (stating that as long as strong and threatening language has not been used, "warnings to potential defense witnesses concerning self-incrimination or possible perjury charges have been held to be proper"). Most significantly, "under certain circumstances, the prosecutor, as an officer of the Court, has a duty to inform the Court that it may be necessary for the Court to inform a witness of his rights under the Fifth Amendment." *People v Callington*, 123 Mich App 301, 306-307; 333 NW2d 260 (1983). The prosecutor should share this information with the court outside the presence of the witness, and if the trial court finds that it is necessary to inform the witness of his Fifth Amendment rights, the court should do so outside the presence of the jury. *Id.* at 307. See also *People v Dyer*, 425 Mich 572, 578 n 5; 390 NW2d 645 (1986).

In this case, there is no basis for concluding that the prosecutor attempted to intimidate or threaten Soria into not testifying. There is no evidence that she communicated with Soria directly, much less threatened to bring criminal charges against him or otherwise punish him if he decided to testify. The record shows that the prosecutor informed the trial court, outside the presence of the witness and the jury, that a warrant charging Soria with obstruction of justice and witness intimidation had been issued. Based on this information, the trial court appropriately exercised its discretion to appoint an attorney to represent Soria concerning the potential issues of self-incrimination. When it did this, the court emphasized to Soria, on the record, that it did have any opinion as to whether he was guilty of any crime; rather, it only believed that it was important at that time for Soria "to speak with someone whose only job . . . is to protect [his] best interests." After Soria's counsel had an opportunity to consult with him, his attorney explicitly stated on the record that he had advised Soria not to testify. The court then questioned Soria, who stated that he had decided to not testify.

The record reveals that Soria's decision was based on the advice of his counsel, which weighs against a finding of improper prosecutorial intimidation. See *Dyer*, 425 Mich at 578 n 4. Nothing in the record, apart from the self-serving affidavit proffered by defendant on appeal,[5]

---

[4] To the extent that defendant argues that the trial court's statements were improper, this claim is also unpreserved and reviewed for plain error affecting substantial rights.

[5] Defendant did not file a motion with this Court to expand the record on appeal under MCR 7.216(A)(4). We may decline to consider facts set forth in the affidavit "because it is

suggests that Soria's decision, made in consultation with his appointed attorney, to voluntarily exercise his right against self-incrimination was the result of improper coercion by the prosecutor or the trial court. Although Soria contends in his affidavit that he felt coerced by the trial court and his appointed counsel, this subjective claim does not contradict the clear evidence that the trial court's statements were not threatening, coercive, or improper. Cf. *Callington*, 123 Mich App at 303-304, 306. Additionally, it is noteworthy that Soria does not contend, or even suggest, in his affidavit that he was threatened or intimidated by the prosecutor.

## C. PRESENTATION OF PERJURED TESTIMONY

Defendant also argues that the prosecutor engaged in misconduct by presenting Lindsey's testimony, which the prosecutor knew to be false. We reject defendant's claim.

A defendant's constitutional due process rights are violated when his conviction is "obtained through the knowing use of perjured testimony[.]" *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "[A] prosecutor has an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Aceval*, 282 Mich App at 389 (quotation marks and citations omitted). However, reversal is not necessary when the prosecutor does not attempt to conceal contradictions in a witness's testimony, and defense counsel is afforded a sufficient opportunity to impeach the witness's credibility through the use of prior statements. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998).

Defendant provides no evidence that Lindsey offered false testimony. He merely argues—based on the prosecutor's remark during her closing argument that Lindsey "minimized his involvement"—that "the prosecutor did not believe her own witness" and, therefore, knowingly offered perjured testimony. The fact that the prosecutor may have believed that Lindsey minimized his own participation in the crime does not establish that she knowingly used perjured testimony to obtain defendant's convictions. See *Gratsch*, 299 Mich App at 619; *Parker*, 230 Mich App at 690. Notably, this specific remark demonstrates that the prosecutor did not attempt to conceal the inconsistencies between Lindsey's and the victims' testimony. See *Parker*, 230 Mich App at 690. Further, during her closing argument, the prosecutor expressly observed that Lindsey's attempt "to make it seem as if he didn't do as much as he did" was

_____

impermissible to expand the record on appeal." *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

To the extent that defendant briefly suggests in his statement of the question presented that Soria's affidavit constitutes newly discovered evidence, we deem this claim abandoned given defendant's failure to offer any argument or supporting authority explaining how this affidavit qualifies as such. See *People v Bosca*, 310 Mich App 1, 48; 871 NW2d 307 (2015), appeal held in abeyance 872 NW2d 492 (2015). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v Iannucci*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 323604); slip op at 2; see also *Bosca*, 310 Mich App at 48.

contrary to the victims' testimony about his actions.  The prosecutor then argued that Lindsey's testimony only confirmed his presence in the apartment and the names of his accomplices.

Contrary to defendant's suggestion on appeal, the introduction of testimony that conflicts with other witnesses' testimony does not necessarily require a finding that the prosecutor knowingly used perjured testimony.  Such a circumstance raises issues of credibility, not perjury. Moreover, the record shows that defense counsel was afforded an extensive opportunity to impeach Lindsey's credibility with his prior written confession and other matters.  See *id*.  The jury was free to believe or disbelieve all, or any portion, of Lindsey's trial testimony.  *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

## VII.  JURY INSTRUCTIONS

Defendant next argues in his supplemental brief that the trial court erred by failing to provide jury instructions on the issues of mere presence, attempt, and alibi.  We disagree.

## A.  STANDARD OF REVIEW AND APPLICABLE LAW

Defendant requested attempt and alibi instructions, preserving those claims for appeal. We review *de novo* questions of law pertaining to jury instructions, but we review for an abuse of discretion a trial court's decision on whether an instruction is applicable to the facts of the case.  *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).  A trial court abuses its discretion when its decision falls outside the range of principled outcomes.  *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014).

Because defendant did not request a "mere presence" instruction, that claim is unpreserved, see *People v Cain*, 238 Mich App 95, 127; 605 NW2d 28 (1999), and reviewed for plain error affecting substantial rights, *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001), citing *Carines*, 460 Mich at 763.

> A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her.  The trial court's role is to clearly present the case to the jury and to instruct it on the applicable law.  Jury instructions must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence.  Jury instructions are reviewed in their entirety, and there is no error requiring reversal if the instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury. [*People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007) (citations omitted).]

## B.  MERE PRESENCE INSTRUCTION

Defendant has waived appellate review of his claim that the trial court erred by failing to instruct the jury on mere presence.  Before the jury was dismissed for deliberations, the parties discussed the jury instructions.  As defendant acknowledges, defense counsel did not request a mere presence instruction.  Then, after the trial court completed its final instructions, it asked the parties whether they had any objections to the instructions.  Defense counsel stated, "None, Judge."  Defense counsel's expressed satisfaction with the jury instructions, which did not

include an instruction on mere presence under M Crim JI 8.5, waived this claim and extinguished any error. *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011); *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

We also reject defendant's alternative claim that defense counsel was ineffective for failing to request an instruction on mere presence. Defendant never contended that he was present at the scene of the crime. Instead, he testified that he had no involvement in the robbery whatsoever and, instead, was present at several other locations throughout the evening. As such, he proffered defense theories based on misidentification and inconsistencies in the witnesses' statements. Additionally, contrary to defendant's characterization of the victims' testimony, the witnesses clearly testified that defendant was directly involved in the perpetration of the crime; they never testified that *defendant* was merely "running around the room" during the commission of the robbery.

Moreover, the language and placement of M Crim JI 8.5, formerly CJI2d 8.5, indicates that such an instruction applies in cases where the prosecution is proceeding on an aiding and abetting theory, see *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999), or where a defendant is charged with constructive possession, *People v Echavarria*, 233 Mich App 356, 370; 592 NW2d 737 (1999). See also *People v Head*, 211 Mich App 205, 210-211; 535 NW2d 563 (1995). Here, defendant was not prosecuted under an aiding and abetting theory, as the prosecutor's theory at trial was that defendant directly committed the charged offenses, not that he merely assisted others in committing them. Defendant's statement on appeal that the trial court instructed the jury on aiding and abetting is factually inaccurate.

Accordingly, it is clear that a mere presence instruction was not applicable to the facts of this case, see *Dobek*, 274 Mich App at 82; *People v Moldenhauer*, 210 Mich App 158, 160; 533 NW2d 9 (1995), and defense counsel was not ineffective for failing to request it, see *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## C. ALIBI INSTRUCTION

Defendant argues that the trial court erroneously denied his request for an alibi instruction under M Crim JI 7.4, as Watkins' testimony and his own testimony supported a finding that he was with her when the crimes were committed. We disagree.

In general, if a defendant requests an alibi instruction, it must be provided, even if the alibi testimony is solely provided by the defendant and unsupported by any other evidence. *People v McGinnis*, 402 Mich 343, 345; 262 NW2d 669 (1978). Even when warranted, however, a trial court's failure to give an alibi instruction may constitute harmless error. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000); *People v Matthews*, 163 Mich App 244, 249-250; 413 NW2d 755 (1987).

The trial court's decision to refuse the requested alibi instruction did not fall outside the range of principled outcomes. See *Armstrong*, 305 Mich App at 239. Alibi testimony is "testimony offered for the sole purpose of placing the defendant elsewhere than at the scene of the crime." *McGinnis*, 402 Mich at 345 (quotation marks and citation omitted); see also *People v*

*Gillman*, 66 Mich App 419, 424; 239 NW2d 396 (1976). Defendant never filed a notice of alibi, which was required to assert an alibi defense. MCL 768.20(1). Nonetheless, in order to be considered alibi testimony, the testimony must "raise a reasonable doubt of defendant's presence at the time and place of the commission of the crime charged." *People v Lee*, 391 Mich 618, 641; 218 NW2d 655 (1974). Here, defendant testified that he was at various locations other than the victims' apartment throughout the evening, including, among others, Watkins' apartment. He claimed to be coming out of her apartment when he saw Lindsey carrying a TV. Watkins—who was listed on the prosecution's witness list, was called by the prosecution at trial, and clearly was not called as an alibi witness, see *McGinnis*, 402 Mich App at 345—initially testified that defendant was in her apartment from 9:00 p.m. to 12:30 a.m., but she later clarified that he was not in her apartment "the whole time," and that he left on more than one occasion, including once with Lindsey. Notably, the victims' apartment and Watkins' apartment are in close proximity to each other. Given the fact that defendant and Watkins both testified that he was not in her apartment for significant periods of time on the evening of the incident, their testimony does not raise a reasonable doubt as to whether defendant was present at the scene when the crime was committed. Accordingly, the trial court's conclusion that an alibi defense was not supported by the evidence was not outside the range of reasonable and principled outcomes. See *Armstrong*, 305 Mich App at 239; *Dobek*, 274 Mich App at 82

Nevertheless, even if we assume that the trial court erred by refusing to give the requested instruction, reversal is not warranted. See *Sabin*, 242 Mich App at 658, 660; see also *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), citing MCL 769.26. The jury heard defendant's testimony that he was leaving Watkins's apartment when he saw Lindsey carrying a TV, presumably after Lindsey left the victims' apartment. As such, if the jury believed defendant's testimony, it could reasonably infer that he was in Watkins' apartment during the offense. Stated differently, even without an express alibi instruction, a person of ordinary intelligence could review defendant's testimony and, if he or she determined that it was credible, conclude that defendant was elsewhere during the crime and, therefore, innocent. Further, defendant's primary theory at trial, and his strongest theory in light of the evidence in this case, was misidentification, which necessarily encompasses a claim that he was not present when the crimes were committed and that the witnesses erroneously or falsely identified him as one of the perpetrators. Additionally, the trial court appropriately instructed the jury regarding the prosecutor's burden of proof and the elements of the crimes. The trial court also explicitly instructed the jury that the prosecutor had the burden of proving that defendant was the individual who committed the crimes and explained how the jury should consider identification evidence.

On this record, reversal is not required based on the trial court's failure to give an alibi instruction because it is clear that the absence of such an instruction did not affect the outcome of the trial. See *Sabin*, 242 Mich App at 658, 660; see also *Lukity*, 460 Mich at 495-496.

### D. ATTEMPT INSTRUCTION

At trial, defendant requested that court provide a jury instruction on attempt under M Crim JI 18.7. Here, the record includes significant evidence that defendant and his accomplices broke into the victims' apartment, held the victims at gunpoint while demanding money, and stole items from the unit. Consistent with this evidence, defendant's theory at trial was that he

was completely innocent and misidentified as a perpetrator, not that any of the charged crimes were attempted but never completed. Contrary to defendant's claim on appeal, the record includes no support for a finding that defendant conspired with the other perpetrators but ultimately abandoned the plan.

Therefore, because a rational view of the evidence did not support an attempt instruction, the trial court properly declined defendant's request. See *Dobek*, 274 Mich App at 82.

## VIII. ADMISSION OF OTHER EVIDENCE

Lastly, defendant contends in his supplemental brief that the trial court abused its discretion when it refused to admit Lewis' written statement to the police and refused to admit a video recording of Lindsey's interview with the police. We disagree.

### A. STANDARD OF REVIEW

Because defendant did not request the admission of Lindsey's statement and withdrew his motion to admit Lewis' statement, these issues are unpreserved and reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

### B. LEWIS' WRITTEN STATEMENT

During defense counsel's cross-examination of Lewis, she testified that she prepared a written statement after initially speaking with a police officer. Defense counsel then asked a series of questions about this statement, including questions regarding the number of males that she identified and whether she identified defendant as one of the perpetrators. Lewis expressly acknowledged that she did not identify defendant in the statement. The defense subsequently argued that Lewis' written statement should be admitted as evidence under MRE 613. During his discussion with the trial court, however, defense counsel ultimately stated, "I will withdraw my motion to admit in [sic] evidence. I got what I need off of it."

Because defense counsel withdrew his motion to admit the statement, it is disingenuous for defendant to argue on appeal that the trial court erred by failing to admit it. "Counsel may not harbor error as an appellate parachute." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). Moreover, defendant argues that he was prejudiced by the court's preclusion of the statement because it was important impeachment evidence given the fact that Lewis did not identify him in it. However, as defense counsel acknowledged, counsel elicited from Lewis testimony expressly confirming the specific impeachment evidence that he wished to gain through the admission of her prior statement.

Thus, this claim does not warrant reversal because defendant has failed to establish the requisite prejudice. See *Carines*, 460 Mich at 763.

### C. LINDSEY'S VIDEO STATEMENT

During defense counsel's cross-examination of Corporal Labrit Jackson, defense counsel elicited testimony that the corporal interviewed Lindsey, that the interview was recorded, and

that the corporal brought the video recording to court. The trial court interjected that the jury was "not about to watch the video," but defendant never actually requested to show the video.

Defendant has failed to provide any analysis supporting his claim that Lindsey's video statement should have been admitted at trial. Although he mentions MRE 803(1) and MRE 803(5) in his brief on appeal, he only discusses these rules with regard to Lewis' written statement. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Bosca*, 310 Mich App 1, 48; 871 NW2d 307 (2015), appeal held in abeyance 872 NW2d 492 (2015). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v Iannucci*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 323604); slip op at 2.

Furthermore, although defendant argues that Lindsey's statement was important impeachment evidence, the corporal clearly and repeatedly testified that Lindsey did not identify defendant as one of his accomplices during the interview, and that Lindsey expressly denied that defendant was involved when the corporal directly asked him about defendant's involvement. As such, it is clear that any impeachment value inherent in the video was, in fact, introduced through the corporal's testimony.

Accordingly, this claim does not warrant reversal because defendant again has failed to establish the requisite prejudice. See *Carines, 460 Mich at 763*.

## IX. CONCLUSION

Defendant has failed to establish that any of his claims on appeal concerning his convictions warrant relief. However, defendant has demonstrated that the trial court erroneously scored OV 19. Because this error affected the minimum range calculated under the sentencing guidelines, resentencing is required.

We affirm defendant's convictions, but vacate his sentences and remand for resentencing. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michael J. Riordan

-17-