COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT ALEXANDER WORLEY,

Defendant-Appellant.

UNPUBLISHED
August 15, 2017

No. 331343
St. Clair Circuit Court
LC No. 15-001711-FC

Before: SHAPIRO, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals his jury convictions of four counts of first-degree criminal sexual conduct, MCL 750.520b(1)(b). The trial court sentenced defendant to a prison term of 15 to 30 years for each conviction, to be served concurrently. We affirm.

The 43-year-old defendant was convicted of sexually abusing JV, the daughter of his former live-in girlfriend, in their family home in St. Clair County. Defendant began dating JV's mother in 1992, when JV was two years old. Defendant and JV's mother thereafter had two children of their own. JV, aged 25 at the time of trial, testified that from ages 11 to 19, defendant continuously engaged her in sexual acts. JV testified that defendant penetrated her vagina with his penis and engaged her in oral and anal sex. The sexual assaults began in 2001, when the family lived in Oklahoma. The four charged offenses occurred in October 2005 through June 2006, when then 15-year-old JV and her family lived in St. Clair County. In June 2006, defendant and JV's mother separated, and JV, and her two younger half-siblings, moved with defendant from St. Clair County.

At age 16, JV became pregnant by defendant, and she gave birth to a son in March 2007. By this time, defendant, JV, and other members of defendant's family had moved to Tennessee. At age 18, JV again became pregnant by defendant, and their second child was born in April 2009. In 2010, JV and her two children returned to Michigan. JV ultimately disclosed the incidents to a counselor and then made a complaint to the St. Clair police in March 2011. Defendant was not arrested until 2015. In the interim, defendant and JV had some communications, and JV allowed defendant to take their children to Tennessee in 2014. The defense theory at trial was that defendant did not do anything inappropriate and that JV's testimony was not credible. At trial, defendant maintained that he first had sex with JV when she

was 16 years old, which was consensual, and did not engage in any other sexual acts with her until they began a consensual relationship when she was 18 years old.

## I. PREARREST DELAY

Defendant first argues that his right to due process was violated because the four-year delay between the reporting of the offenses in 2011, and his arrest in 2015, caused substantial prejudice to his ability to defend himself. He argues that the trial court erred in denying his motion to dismiss based on this issue.[1] "A prearrest delay that causes substantial prejudice to a defendant's right to a fair trial and that was used to gain tactical advantage violates the constitutional right to due process." *People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014). "Defendant must present evidence of actual and substantial prejudice, not mere speculation." *Id.* To be substantial, the prejudice to the defendant must have meaningfully impaired his ability to defend against the charges such that the outcome of the proceeding was likely affected. *People v Patton*, 285 Mich App 229, 237; 775 NW2d 610 (2009). Mere speculation that the delay caused lost memories, witnesses, or evidence does not establish actual and substantial prejudice. *Woolfolk*, 304 Mich App at 454. If a defendant establishes actual and substantial prejudice, the prosecution then bears the burden of establishing that the reason for the delay was sufficient to justify that prejudice. *Patton*, 285 Mich App at 237.

Defendant claims that he was prejudiced by the four-year delay because he lost text messages, cards, and "love letters" from JV that could have undermined her claim that she feared defendant. Initially, defendant contends that those communications were made between 2010 and 2015. The four-year delay would not have affected his efforts to retrieve any of the later communications. More significantly, defendant has not demonstrated substantial prejudice. The unavailability of evidence alone is insufficient to show that defendant suffered actual and substantial prejudice, *Woolfolk*, 304 Mich App at 454, and defendant has made no showing that evidence that JV communicated favorably with him between 2010 and 2015 would have exonerated him. Indeed, the defense used other means to argue that JV was not fearful of defendant, including the fact that she chose to live with him over her mother, began a relationship with him after she turned 18, allowed him to take physical custody of their children, and gave him and his wife tattoos. The loss of the letters, assuming they existed, is not sufficient to satisfy the actual and substantial prejudice requirement.

Defendant also claims that he was prejudiced by the delay because of the death of his sister, Cynthia McElhaney. Defendant indicates that Cynthia, who lived in the same household as defendant and JV at certain periods, would have "testified regarding the complainant's veracity." Preliminarily, defendant fails to indicate when Cynthia died. Moreover, Cynthia was

---

[1] Whether a prearrest delay violated a defendant's right to due process is reviewed de novo. *People v Reid (On Remand)*, 292 Mich App 508, 511; 810 NW2d 391 (2011). We review a trial court's ruling regarding a motion to dismiss for an abuse of discretion. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id.* (quotations and citation omitted).

only one of several relatives who lived in the same household. The defense presented several of the other live-in relatives, including a different sister, an adult nephew, and defendant's daughter, who testified about their observations and opinions that JV was not truthful. The record fails to disclose that Cynthia's unavailability impaired defendant's ability to defend against the charges to an extent that the outcome of the proceeding was likely affected.

Defendant lastly argues that he was prejudiced by the delay because of his own inability "to remember the names of potential witnesses who knew [JV] during the relevant times at issue and who could offer testimony regarding the veracity of [JV]." But again, general allegations of prejudice caused by delay, such as the unspecified loss of memory, are insufficient to show that a defense was affected. *Woolfolk*, 304 Mich App at 454. Defendant has failed to show that his alleged loss of memory resulted in any meaningful impairment of his defense. The trial court did not abuse its discretion in denying defendant's motion to dismiss based on the prearrest delay.

## II. OTHER ACTS EVIDENCE

Defendant argues that the trial court erred by admitting evidence of other uncharged acts that occurred when JV was between 11 and 15 years old, contrary to MCL 768.27a and MRE 404(b).[2] MCL 768.27a provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." In this narrow context, evidence of a defendant's propensity to commit a crime is permitted, so long as it does not violate MRE 403. *People v Watkins*, 491 Mich 450, 470, 481-483; 818 NW2d 296 (2012); MRE 401.

MRE 403, excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403; *Watkins*, 491 Mich at 481. Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995); *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002). When applying MRE 403 to evidence in the context of MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. Courts should consider the following factors when deciding whether to exclude other-acts evidence under MRE 403 as being overly prejudicial:

---

[2] The trial court ruled that the other acts evidence was admissible under MRE 404(b) or MCL 768.27a. However, as we observed in *People v Smith*, 282 Mich App 191, 205; 772 NW2d 428 (2009), where, as here, a listed offense is at issue, analysis of whether the other acts evidence is admissible "begins and ends with MCL 768.27a." We review a trial court's decision to admit evidence for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id.* at 487-488.]

When weighing probative value of other-acts evidence, courts should also consider the extent to which the other-acts evidence supports the victim's credibility and rebuts any defense attack on the victim's credibility. *Id*. at 491-492.

In the present case, the other uncharged acts were relevant to defendant's propensity to commit the charged offenses, and to assist the jury in weighing JV's credibility. The evidence gave the jury an intelligible presentation of the interaction between defendant and JV over the years, and the context of their relationship, to provide the "complete story," especially where defendant claimed that he first engaged in sexual intercourse with JV when she, at age 16, unexpectedly initiated sexual contact with him, which was when he impregnated her, and then did not have sexual contact with her again until she was age 18. Thus, the probative value of the other acts evidence was high.

Defendant argues that this evidence was far more prejudicial than probative because the uncharged acts "occurred so long ago." The trial court properly considered this argument and determined that, while "somewhat dated that in and of itself is not a sufficient reason to overcome the admission of that particular evidence . . . under the statutory provision." We agree, and further observe that, although the other uncharged acts could be considered "outdated" as they relate to the date of trial, there is no temporal divide between the other acts and the charged offenses, which occurred in 2005 and 2006. Defendant further contends that the evidence is unduly prejudicial because the jury likely focused on and convicted him based on those uncharged acts, which occurred when JV was younger. However, the prosecutor focused on the proper purpose for which the evidence was admissible. In its final instructions, the trial court gave a cautionary instruction to the jury concerning the proper use of the evidence, thereby limiting the potential for unfair prejudice. Given the highly probative value of the other-acts evidence, the probative value was not substantially outweighed by the danger of unfair prejudice.

### III. MOTION FOR A MISTRIAL

Defendant argues that the trial court abused its discretion by denying his motion for a mistrial after a potential juror, who was removed, commented that he had interacted with defendant through his employment at the Intervention Center.[3] Defendant's specific claim is that the potential juror's comments denied him his right to the presumption of innocence. A

---

[3] A trial court's ruling on a motion for a mistrial is reviewed for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). A mistrial should be granted "only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id*. (citation omitted).

defendant has a right to a fair and impartial jury. *People v Stokes*, 312 Mich App 181, 187; 877 NW2d 752 (2015). To show the denial of a fair and impartial jury in this context, a defendant must show that the jury was exposed to extraneous influences and that the extraneous influences created a real and substantial possibility that those influences could have had an effect on the jury's verdict. *Id*. Due process only demands that jurors act with a "lack of partiality, not an empty mind." *People v Jendrzejewski*, 455 Mich 495, 519; 566 NW2d 530 (1997).

Defendant has not met his burden for relief. Although the potential juror's brief comments indicated that defendant was housed at the Intervention Center, they provided no additional information. The trial court instructed the jury on the presumption of innocence in its preliminary instructions and further discussed the presumption of innocence during voir dire (after the juror had been excused) as defense counsel questioned a different juror about his understanding that defendant did not need to prove his innocence, noting that the presumption is a "legal requirement."[4] The jurors who remained explicitly indicated that they could be fair and impartial. The trial court again instructed the jury of the presumption of innocence in its final instructions and reminded the jury that it took an oath to decide the case based only on the properly admitted evidence and the law as instructed by the court. Given the evidence presented in this case, we see no basis to conclude that the revelation that defendant was in custody caused his conviction. For these reasons, the trial court did not abuse its discretion in ruling that the prospective juror's comments were not grounds for a mistrial.

## IV. JV'S MOTHER'S FIFTH AMENDMENT PRIVILEGE

Defendant also argues that the trial court erred by excusing JV's mother from testifying without properly determining whether she had a valid Fifth Amendment privilege against self-incrimination. The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself or herself. *People v Wyngaard*, 462 Mich 659, 671; 614 NW2d 143 (2000). A witness may invoke "the constitutional privilege against self-incrimination" when a reasonable basis exists "for [the] witness to fear incrimination from questions." *People v Dyer*, 425 Mich 572, 578; 390 NW2d 645 (1986). Regarding the proper procedure for when a witness intends to assert the privilege against self-incrimination, the prosecutor must inform the court, outside the presence of the witness and the jury, of the possible need for the witness to be informed of her Fifth Amendment rights. *Dyer*, 425 Mich at 578 n 5. Then, "the judge must hold a hearing outside the jury's presence to determine if the witness' privilege is valid, explaining the privilege to the witness." *People v Gearns*, 457 Mich 170, 202; 577 NW2d 422 (1998), overruled in part on other grounds in *People v Lukity*, 460 Mich 484, 492-494; 596 NW2d 607 (1999). "If the court determines the assertion of the privilege to be valid, the inquiry ends and the witness is excused." *People v Paasche*, 207 Mich App 698, 709; 525 NW2d 914 (1994).

The record reveals that the trial court complied with the applicable procedure and properly concluded that JV's mother could not be compelled to be called as a witness. During

---

[4] The purpose of voir dire is to expose potential juror bias so that a defendant may be tried by a fair and impartial jury. *People v Sawyer*, 215 Mich App 183, 186; 545 NW2d 6 (1996).

JV's cross-examination testimony, defense counsel elicited that JV's mother knew about defendant engaging in sexual acts with her and that her mother had actually participated in some of the sexual acts with defendant and JV when JV was approximately 14 years old. After the completion of JV's testimony, the prosecutor informed the court that JV's mother would assert her privilege against self-incrimination if she testified at trial. The trial court held a hearing and offered to appoint counsel for JV's mother, which she refused. JV's mother stated that she understood her privilege and was firm on her decision not to testify. Although defendant complains that the trial court did not question JV's mother concerning the validity of her assertion of the privilege against self-incrimination, the court was well aware that JV had implicated her mother as being complicit in some of the sexual assaults. It was evident from JV's testimony that her mother had a "reasonable basis . . . to fear incrimination from questions[.]" *Dyer*, 425 Mich at 578. Under the Fifth Amendment, "testimony having even a possible tendency to incriminate is protected against compelled disclosure." *People v Lawton*, 196 Mich App 341, 346; 492 NW2d 810 (1992). Accordingly, the trial court did not err in ruling that JV's mother had a valid Fifth Amendment privilege against self-incrimination and, accordingly, did not abuse its discretion when it excused her as a witness.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel at trial because defense counsel failed to adequately impeach JV's trial testimony with her prior inconsistent testimony at the preliminary examination.[5] "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. Decisions regarding how to impeach witnesses and what questions to ask are matters of trial strategy, *People v Rockey,* 237 Mich App 74, 76; 601 NW2d 887 (1999), and we "will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

Defendant complains that defense counsel failed to adequately challenge JV's trial testimony with inconsistencies in her prior testimony regarding her motive for ultimately reporting defendant in 2011. As defendant observes, JV initially testified at trial that she reported defendant because her counselor encouraged her to do so. On cross-examination, using JV's preliminary examination testimony, the following exchange occurred:

> *Defense counsel*: Now, do you recall being asked and maybe I should ask you now in 2011 why did you feel compelled to make this complaint to law enforcement?

---

[5] Because defendant did not raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

*JV*:   Because I had got myself a counselor and I talked to her about everything that happened to me and she showed me that basically that it was wrong what he'd done.  So, I went ahead and I called up our, I went ahead and I went to the Wayne County Police Department and they told me I had to come up here.

*Defense counsel*:   So you're telling me that the primary reason why you reported this in 2011 was because of your counselor, correct?

*JV*:   Correct, but it was my choice to do it cause I wanted to.

*Defense counsel*:   Do you remember me asking you in July why you reported this in 2011, and do you recall what your answer was?

*JV*:   No, I don't.

*Defense counsel*:   So I'm going to show you page 43. . . .

\* \* \*

*JV*:   Yes, I remember saying that.

*Defense counsel*:   So when I asked you in July of 2015 why you felt compelled to report this to the Sheriff's Department what was your response?

*JV*:   My, do I read it?

*Defense counsel*:   Well, if it refreshes your memory you can tell me what your response was?

*JV*:   Oh, because of the mean and threatening phone calls I was receiving.

*Defense counsel*:   So you reported this because [defendant] was calling you and threatening you—

*JV*:   Uh-hum.

*Defense counsel*:   —in March of 2011?

*JV*:   Yes.

*Defense counsel*:   And what was he threatening you about, taking the children?

*JV*:   He, I don't exactly remember what he was threatening, but he would get, he would get violent over the phone, threat—there was one time I got threatened to where I, he'd come up here and I'd get hurt or something like that.  I can't remember what the conversation was about.  And I just got tired of it.  And I

just got tired of that. And that's why I cut off all contact with him and didn't let my kids talk to him or anything.

Defendant acknowledges this exchange, but contends that defense counsel allowed JV to avoid her exact prior testimony that defendant threatened to take the children and that "she was tired of the drama." Defendant provides additional questions that he contends defense counsel should have asked JV, such as using her prior testimony that some of the sexual assaults occurred in defendant's room to challenge her trial testimony that all of the sexual assaults occurred in her bedroom.

The record demonstrates that defense counsel used JV's prior testimony to discredit her at trial, even if he did not ask each question that defendant now suggests. When defendant raised this complaint at sentencing, the trial court observed that defense counsel "pointed out numerous inconsistencies which gave the jury the ability to adequately and fully assess the credibility of [JV]", an observation that the record bears out. In addition to inconsistencies in her own testimony, defense counsel cross-examined JV about inconsistencies in her testimony and the statements she made to the police, and called the initial interviewing officer as a defense witness. In closing argument, defense counsel highlighted those inconsistences to argue that JV was not credible. In addition to eliciting inconsistencies, defense counsel emphasized that JV chose to continue living with defendant, as opposed to her mother, when they separated in 2006, and argued that JV's choice undermined any claim that she was afraid of defendant. Defense counsel further cross-examined JV regarding the fact that she claimed that defendant threatened to take their children if she did not marry him in 2010, but he never took the children, and she was actually able to prevent him from seeing them for years. The record does not support a finding that defense counsel's impeachment efforts and defenses were objectively unreasonable or prejudicial.

## VI. PROSECUTOR'S CONDUCT

Defendant argues that the prosecutor engaged in misconduct when she impermissibly commented in closing argument that defense counsel used distortions, red herrings, and threw "enough stuff at the jury hoping something would stick," thereby suggesting that defense counsel was attempting to mislead the jury.[6] It is generally improper for a prosecutor to argue that defense counsel has attempted to mislead the jury, *People v Dalessandro*, 165 Mich App 569, 580; 419 NW2d 609 (1988), but a "prosecutor may fairly respond to an issue raised by the defendant." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Further, an otherwise improper remark might not warrant reversal if the prosecutor is responding to the defense counsel's argument. *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996).

---

[6] Because defendant did not so challenge the prosecutor's comments, these claims are unpreserved, and our review is limited to plain error affecting defendant's substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010); *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014).

Viewed in context, the prosecutor's remarks, made during rebuttal argument, did not suggest that counsel was trying to mislead the jury, but fairly responded to defense counsel's closing argument by responding, on the basis of the evidence, that the defense's theory of the case was a pretense and ignored the evidence. In specific, during closing argument, defense counsel argued that the jury should believe defendant and find JV to be "a liar." Defense counsel argued that the prosecutor "likes to pick and choose what testimony she wants you to see or hear," and emphasized that JV had the choice to decide with whom she would live, yet, if JV is believed, it would mean she chose to live with a "rapist." The prosecutor argued that defense counsel ignored the reasons that JV gave for why she stayed with defendant. The prosecutor also addressed defense counsel's negative assertions regarding the two officers involved in the case. Defense counsel suggested that the officer in charge was hiding something because he testified about defendant's interview, but did not play the videotape of the interview. Counsel further emphasized that the defense had to call the initial reporting deputy as a defense witness, and characterized the deputy as a "prosecution witness." The prosecutor discussed the evidence that supported her argument that defendant's story was not believable. The mere use of the challenged language in this context did not make the argument improper.[7] The prosecutor was not required to state her inferences in the blandest possible language. *People v Dobek*, 274 Mich 58, 66; 732 NW2d 546 (2007). Her remarks were not clearly improper.

## VII. SCORING OF OV 8 AND OV 13

Lastly, we reject defendant's argument that the trial court erroneously scored offense variables (OV) 8 and 13, and, therefore, reject his argument that he is entitled to be resentenced.[8]

### A. OV 8

MCL 777.38(1)(a) directs a score of 15 points if "[a] victim was asported to another place of greater danger or to a situation of greater danger[.]" MCL 777.38(1)(a). Although the term "asportation" is not defined within the statutory sentencing guidelines, our Supreme Court has held that the "asportation" element of OV 8 is satisfied "[i]f a victim was carried away or

---

[7] Moreover, a timely objection to the challenged remarks could have cured any perceived prejudice by obtaining an appropriate cautionary instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). And even though defendant did not object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions. These instructions were sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001).

[8] When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

removed to another place of greater danger or to a situation of greater danger[.]" *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017).

The trial court concluded that defendant's asportation of JV was sufficient to score OV 8 at 15 points because defendant directed her into the bedroom in order to sexually assault her, and the bedroom was "more secretive." We agree. JV testified that the sexual assaults occurred in the bedroom. The presentence report (PSIR) also notes that JV described how defendant would call her into the bedroom, away from others, to sexually assault her.[9] Contrary to what defendant argues, there is no requirement that the movement be forcible. Therefore, a preponderance of the evidence supports that defendant asported JV into the bedroom in order to sexually assault her, thus making it less likely that the assault would be discovered, which rendered the location a "place of greater danger" or a "situation of greater danger." See *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014).

B. OV 13

OV 13 "is continuing pattern of criminal behavior." The trial court must score 50 points for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person . . . less than 13 years of age." MCL 777.43(1)(a). All crimes within a five-year period, including the sentencing offense, must be counted, MCL 777.43(2)(a), and a pattern of criminal activity may be based on multiple offenses arising from the same event. See *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001). There was ample evidence both at trial and detailed in the PSIR to support that defendant committed numerous and continuous sexual penetrations against JV beginning at age 11. Moreover, as the trial court aptly observed, the evidence used to score OV 13 is not "venue limited."

Affirmed.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien

---

[9] "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR . . . ." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). It may also properly rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).